Jeremy R. Morris
Idaho Bar No. 8500
PO Box 891
Hardy, Virginia 24101
Tel: (208) 964-5878
jrmorris81@icloud.com

*pro se* Plaintiff

## U.S. DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| Jeremy Ray Morris,<br><br>Plaintiff,<br><br>v.<br><br>Idaho State Bar, Jillian Caires, Caralee Lambert, Joesph Pirtle, Joel Hazel, Molly O'Leary, and John Does 1-100.<br><br>Defendants. | Civil No. 1:25-cv-446-AKB<br><br>**PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT**<br><br>JURY TRIAL REQUESTED |

COMES NOW, Jeremy Ray Morris, (hereinafter, "Morris"), pursuant to 42 U.S.C. §1983, §1988, Plaintiff seeks to establish that Defendants maliciously and intentionally engaged in conspiracy to commit First Amendment retaliation against Plaintiff's freedom of speech, free exercise of religion, and the right to petition the government for a redress of grievances (First Amendment of the US Constitution and Article 1 of the Idaho State Constitution), violated the Equal Protection Clause of the Fourteenth Amendment, and by depriving the Plaintiff of his Fourth Amendment right to his property under the U.S. Constitution.  Morris seeks damages through Idaho Code sections 6-901, et seq., commonly referred to as the "Idaho Tort Claims Act" (hereinafter, ITCA) and Idaho Code ("I.C.") section 19-3924 Malicious Prosecution as

Defendants are jointly liable for acting under the color of their authority as state officials to target the Plaintiff without cause or justification and for which they knowingly acted in violation of the Plaintiff's Constitutional rights.  Plaintiff further alleges officials with ISB acted as an enterprise to deprive Morris of his property, livelihood, and business pursuant to §1961 and §1964 (RICO) and Idaho Code §18-7803 Civil Remedies for Racketeering Idaho's Racketeering Act to allege and aver as follows:

# I.  <u>INTRODUCTION</u>

1.  This is an action brought under 42 U.S.C. §1983, the laws of the State of Idaho, the Idaho Tort Claims Act, I.C. 19-3924 Malicious Prosecution, state and federal RICO statutes under I.C. §18-7803 and 18 U.S.C. §1961 and §1964, and rights guaranteed under the US Constitution under the First and Fourth and Fourteenth Amendments; to hold the Idaho State Bar, *via* its enforcement officials, accountable for their unreasonable, unlawful, and malicious violations of the Plaintiff's rights.

2.  An actual controversy exists between the parties involving substantial constitutional issues, in that the Idaho State Bar ("ISB") and its officials, acting under color of law, knowingly and with malice, schemed to deprive the Plaintiff of his property, his license to practice law—long recognized as a property interest—and, in an effort to target ideological opponents, acted in concert as part of an enterprise to covertly deprive the Plaintiff of his Constitutionally protected rights under a knowingly-false legal pretext.

3.  A coordinated effort between multiple bar officials was made to discriminate against the Plaintiff's religious opinions, his exercise of speech, and his ability to petition the government for a redress of grievances.  See 42 U.S.C. §1983.  Defendants (including, unknown John Does), acted in concert in an enterprise to use the state against a political opponent.

4.  Plaintiff Jeremy Morris seeks damages to restore the losses suffered as a consequence of Defendants' knowingly contrived "investigation" and injunctive relief in the form of oversight as a court-appointed Special Master to protect the Plaintiff from potential retaliation for filing this lawsuit, from this quasi-state/quasi-private/quasi-judicial body.

5.  Plaintiff seeks declaratory relief to the effect that 8.2(a), as applied to Plaintiff's speech in statements about Judge Winmill, violates the First Amendment. Plaintiff asserts that the First Amendment's Free Speech Clause protects citizens' (including attorneys') right to weigh in on public matters.

6.  The facts set out in this complaint establish a conspiracy to commit a 1983 violation of Plaintiff's First Amendment rights under 42 U.S.C. § 1983 for which the Idaho State Bar, Jillian Caires, Caralee Lambert, Joesph Pirtle, Joel Hazel, Molly O'Leary are jointly and severally liable and for which each Defendant is separately liable. These Defendants agreed and conspired to retaliate against Plaintiff for his exercise of his First Amendment rights. ISB, Jillian Caires, Caralee Lambert, and Joesph Pirtle and other potential John Does violated Plaintiff's First Amendment right to speak freely on a matter of public concern that was clearly established at the time he exercised his First Amendment right and the time he was terminated from his employment.  The degree to which Defendants Joel Hazel and Molly O'Leary may have been engaged in this conspiracy is unknown.

## II. JURISDICTION and VENUE

7.  This action arises under the First, Fourth, and Fourteenth Amendments to the United States Constitution and federal statutes 42 U.S.C. §1983 and 18 U.S.C. §1961 and §1964, Article

1 of the Idaho State Constitution, Idaho Code sections 6-901, Idaho Code ("I.C.") section 19-3924 and Idaho Code §18-7803.

8. This Court has jurisdiction of this claim under 28 U.S.C. §§1331 and §§1332.

9. This Court is authorized to grant Plaintiff's prayer for relief regarding costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

10. Venue is proper under 28 U.S.C. §1391(b). Each and all of the acts alleged herein were done by Defendants under the color of law and pretense of authority of the statutes, ordinances, regulations, and customs of the Idaho State Bar. A substantial part of the events giving rise to the claim arose in the U.S. District Court for the District of Idaho and Defendants reside there.

## III. <u>THE PARTIES</u>

11. Jeremy Ray Morris, Plaintiff, has a place of residence at 2749 Bluewater Drive, Moneta, Virginia 24121. At all relevant times to this Complaint, Plaintiff has resided in either the state of Virginia or South Carolina, but at no time in the State of Idaho.

12. At all relevant times to this petition, Idaho State Bar, Defendant, (hereinafter, ISB) has maintained a principal place of business at 525 W. Jefferson Street, Boise, Idaho 83702.

13. Joe Pirtle is an agent of the ISB and vested with the authority to make decisions. He used his authority to knowingly undertake actions inconsistent with state and federal law.

14. Jillian Caires has been an agent of the ISB at least through 2024 and resides in Idaho.

15. Caralee Lambert is currently an agent of the ISB and resides in Idaho.

16. Joel Hazel is an Idaho attorney and resides in Kootenai County, Idaho.

17. Molly O'Leary is an Idaho attorney and resides in Idaho.

18.  Each and all of the acts alleged herein were done by Defendants' contrived misapplication of the statutes, ordinances, regulations, customs, policies, procedures, and laws of the State of Idaho, the United States Constitution, and the laws of the United States.

** NOTE:  This Complaint will use the phrase "ISB" or "Idaho State Bar" interchangeably at times to refer to the officers or agents of ISB.  Plaintiff holds ISB responsible as officers or agents of ISB held themselves out as agents acting under color of law.  However, this Complaint also seeks to simultaneously hold these officers and agents jointly and severably liable as their actions, in some cases, went beyond the scope of their duties by maliciously and with gross negligence abusing their offices to Plaintiff's detriment.  Plaintiff with therefore defer to the Court or the jury to determine when ISB is liable and when officers were acting beyond their scope, and to what extent Defendants Molly O'Leary, Joel Hazel, and any and all John Does yet unknown and only learned through Discovery, acted in concert with ISB and its officers in the scheme laid out in this Complaint.

## IV. <u>STATEMENT OF FACTS</u>

19.  Plaintiff hereby incorporates and adopt each and every allegation in the preceding paragraphs numbered 1 through 19.

20.  Jeremy Morris, Plaintiff, was licensed to practice law in the State of Idaho in 2012.

21.  In January 2017, Morris filed suit against his homeowners' association for religious discrimination and violations of the Fair Housing Act.  The jury would ultimately unanimously rule in Morris' favor on all four counts, but District Judge Winmill later reversed the jury under Rule 50b and ordered Mr. Morris to pay the HOAs attorney fees.  Morris appealed this decision and in June 2024 the 9th Circuit partially overturned Judge Winmill and affirmed that Morris did indeed have at least one viable claim on which the jury could have ruled.

22.  At the original trial held in October 2018, Judge Winmill refused to remove a juror who admitted to being "prejudiced" and "biased" against Morris.

23.  In June 2021, Morris was advised by another attorney that actions taken by Judge Winmill were tantamount to misconduct and should be reported.  Mr. Morris immediately filed judicial misconduct against Judge Winmill on the basis of the transcript from Morris' HOA trial and Winmill's reasoning that he would not dismiss an openly prejudiced prospective juror.

24.  Mr. Morris was being interviewed at the time for a film about the HOA lawsuit called, "'Twas the Fight Before Christmas," produced by a London company and distributed by Apple+.  Morris admitted on camera as he did when he filed the judicial misconduct against Winmill that it was Morris' sincere opinion that Judge Winmill "attempted to rig the jury" (as evidenced by the court transcript) and the motive for Judge Winmill doing so was, in Morris' view, that the Judge is "an anti-Christian bigot."

25.  Due to the hostility experienced at the hands of the HOA and a death threat placed directly in the Morris family mailbox, the Morrises contemplated leaving the area.  The Morrises were shown a Plantation for sale in South Carolina-built in 1790 by a Revolutionary War Colonel and for which the Morrises could potentially start a new life by turning it into a wedding venue to offset restoration costs.

26.  The Morris family relocated in December 2022 and finalized the purchase of the Plantation in February 2023.  After relocating—but while in transit, Mr. Morris was informed on January 17, 2023 that the Idaho State Bar was investigating him based on two complaints filed against him.  The letter issued by the Idaho State Bar stated the following:

January 17, 2023

PERSONAL AND CONFIDENTIAL

Jeremy R. Morris
j.morris@libertyconsulting.us

     RE:    ISB v. Jeremy Morris (ISB 21-312 and 22-014)

Dear Mr. Morris:

     I have enclosed copies of posts from your Facebook account dated December 27, 2021, January 13, 2022, January 27, 2022, and April 10, 2022, which were brought to my attention. In addition to your Facebook posts, also brought to my attention, is the November 26, 2021 Apple TV release of "Twas the Fight Before Christmas" in which you state, "that Federal Judge flipped the verdict and ordered my family to pay $112,000 of their legal fees. So we have a corrupt judge." Lastly, please see the attached link to a video clip in which you state: "the corrupt, Federal Judge Winmill, who tried to rig a jury, who's now facing a misconduct charge that I filed against him." The video clip also contains a statement at the bottom of the screen: "THE JUDGE IS A HATEFUL ANTI-CHRISTIAN BIGOT."

     Based upon this, we would like you to please respond to whether you made statements with reckless disregard as to the truth or falsity concerning the qualifications or integrity of a judge, with reference to I.R.P.C. 8.2(a).

     We request that you submit your response within twenty-one (21) days from the date you receive this letter. If you have any questions, please do not hesitate to contact me.

Sincerely,

Joseph N. Pirtle
Bar Counsel

27.  The only two allegations against Morris were that Morris had a religious-based opinion that the judge was 1) "an anti-Christian bigot", and 2) that Morris had made a statement that Judge Winmill "tried to rig a jury, who's now facing a misconduct charge that I filed against him."  ISB claimed this was potentially a violation of I.R.C.P. 8.2(a) which states, "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge." *Exhibit 1*.

28.  Upon receiving the letter, Morris called Joe Pirtle, ISB Bar Counsel, providing the rationale that this constituted free speech, religious expression, and protected opinion.  Mr. Morris then asked Mr. Pirtle if Mr. Pirtle was aware of the dimensions of the document the ISB

sends to disbarred lawyers.  Pirtle was confused what Morris meant and Morris explained that if the ISB were to ever steal Morris' license over Morris' exercise of his First Amendment rights—including his right to petition the government for a redress of grievances—that Morris would be framing the disbarment letter in a beautiful frame.

29.  Morris never directly contacted the ISB again about the investigation and hired counsel Dustin Charters.

30.  On March 15, 2022, Morris provided a formal 15-page answer to the ISB within the deadlines permitted for a response.  *Exhibit 2*.  Among the findings were a controlling case called *Standing Committee on Discipline v. Yagman*, 55 F.3d 1430 (9th Cir. 1995). In that case, which has never been overturned, a lawyer named Yagman called a judge an "antisemite," "dishonest," and a "right-wing fanatic." In fact, so expansive was the speech protections granted to Yagman, the 9th Circuit even agreed that calling the judge a "drunk on the bench with a penchant for sanctioning Jewish lawyers: me" was protected speech by lawyers.

31.  In sum, not only was Morris within his right to express his opinion that Judge Winmill has religious animus toward Christians, but Morris could certainly have said a lot more than he did.  He will not do that here.

32.  Morris provided his attorney a LITANY of publicly available video-recorded assertions by lawyers on Fox News, MSNBC, and local broadcast TV regarding their opinions of judges.  Some lawyers called judges racist or worse—none have been disbarred as some of these same lawyers are regular guests on television.

33.  Morris requested through counsel that ISB provide the original complaints made to ISB.  The first complaint was from attorney Joel Hazel.  Mr. Hazel is married to attorney Christa Hazel.  Christa Hazel was a member of the CDA School District Board that Mr. Morris sued on

behalf of the Republican Party (Mr. Morris' client) related to violations of state election law by the CDA School District at polling places during the 2020 election. *Exhibit 7.*

> **From:** Joel P. Hazel <JPH@witherspoonkelley.com>
> **Sent:** Monday, December 27, 2021 9:45 AM
> **To:** Brad Andrews <bandrews@isb.idaho.gov>
> **Subject:** More evidence against Jeremy Morris
>
> ## My wife found this on the internet.
>
> **Joel P. Hazel**
> Principal | Witherspoon • Kelley
> JPH@witherspoonkelley.com | Attorney Profile | vCard

> **From:** Joel P. Hazel <JPH@witherspoonkelley.com>
> **Sent:** Thursday, December 2, 2021 5:17 PM
> **To:** Brad Andrews <bandrews@isb.idaho.gov>
> **Subject:** Attorney Jeremy Morris
>
> Have you watched this?  Mr. Morris' comments about Judge Winmill towards the end of it are troubling in light of IRCP 8.2.
>
> 'Twas the Fight Before Christmas - Apple TV+ Press
>
> **Joel P. Hazel**
> Principal | Witherspoon • Kelley
> JPH@witherspoonkelley.com | Attorney Profile | vCard

**Caralee Lambert**

| | |
|---|---|
| **From:** | Joel P. Hazel <JPH@witherspoonkelley.com> |
| **Sent:** | Monday, January 24, 2022 2:01 PM |
| **To:** | Kathy Funk |
| **Cc:** | Brad Andrews |
| **Subject:** | Grievance against Jeremy Morris ISB file #22-014C |

Hi Kathy:

I received a letter from Brad Andrews about the information I passed along about Jeremy Morris' various statements about Judge Windmill being corrupt or acting corruptly.

My preference would be that the Idaho State Bar be the grievant in that matter.

Thanks and let me know if you have any questions.

**Joel P. Hazel**
Principal | Witherspoon • Kelley
JPH@witherspoonkelley.com | Attorney Profile | vCard

34.  The second was a complaint from Molly O'Leary and sent on December 6, 2021, only FOUR DAYS after Joel Hazel composed his.  *Exhibit 8.*  Not one lawyer consulted by Mr. Morris believed there was even a remote chance that these complaints were not coordinated based upon the timing.  Mr. Hazel was married to a lawyer who sat on the Board of the Defendant that Mr. Morris had sued in federal court for election violations.  The non-disclosed conflict of interest should have set off alarm bells at ISB, unless ISB was part of the scheme.

> **Bradley G. Andrews | Bar Counsel**
> Idaho State Bar
> 525 W. Jefferson Street, Boise, ID 83702 | P.O. Box 895, Boise, ID 83701
> (208) 334-4500 | Fax: (208) 334-2764 | www.isb.idaho.gov
> bandrews@isb.idaho.gov
>
> **From:** Molly O'Leary <molly@bizcounseloratlaw.com>
> **Sent:** Monday, December 6, 2021 10:36 PM
> **To:** Brad Andrews <bandrews@isb.idaho.gov>
> **Subject:** Mr. Christmas — North Idaho Exposed, Part 3
>
> Brad - Have you seen this? https://youtu.be/n13C_6CKSwo
>
> Please tell me the Bar is taking appropriate action.
>
> Molly O'Leary
> BizCounselor@Law, PLLC

35.  Morris reached out to Idaho lawyer Art Macomber, attorney for North Idaho College and a former candidate for Idaho Attorney General.  Mr. Macomber assured Mr. Morris that a lawyer does not lose the right to his freedom of speech.  Shortly after the call with Mr. Macomber, Morris was informed that Mr. Macomber had two separate investigations launched against his license, both of which failed. To the Plaintiff's knowledge, these were the first two allegations ever made against Mr. Macomber in his long and storied career as an Idaho lawyer.

36.  In February 2022, Mr. Morris purchased a 50-acre South Carolina plantation and began restoring it over the course of a year.  The Morrises spent every ounce of their time and treasure in order to create a wedding venue.  But without a job with a law firm in South Carolina, Morris would not be able to continue payments on his new property.

37.  Morris was limited in that he was not presently licensed in South Carolina. However, several law firms expressed interest in hiring Morris—so long as he eventually passed the South Carolina Bar.  The problem was not that Mr. Morris was not yet licensed.  The problem was that Mr. Morris answered truthfully during job interviews at these law firms that he was currently under investigation by the Idaho State Bar.

38.  By July of 2023, the Plaintiff's bank account was all but exhausted and making the mortgage payments became impossible.  Mr. Morris was able to obtain two separate extensions for hardship from the mortgage company.  These mortgage extensions were granted expressly on the condition that Mr. Morris was actively looking for work.  Working in a South Carolina law firm would easily have secured the 50-acre property and business venture… at least until the house was restored well-enough to begin hosting weddings and generating revenue.

39.  A solid offer came from the largest tort firm in South Carolina—a firm named Poulin Willey.  The interview with the Senior Partner lasted several hours along with two other partners. It was explicitly told to Mr. Morris that they would hire him and his lack of a South Carolina license was IRRELEVANT at the time as this could be obtained later.  Their only concern was the investigation by the ISB.  The reason was simple:  If Idaho does formally sanction you, we understand that South Carolina will never license you.  During the same interview, Morris explained the reason for the investigation by Idaho.  One of the law partners exclaimed that he

had said a "lot worse" about judges and that the ISB complaint was probably nothing. Nonetheless, they were clear: No hiring Morris until the investigation in Idaho was resolved.

40.  On the verge of losing his home, Morris spent hours with lawyer Dustin Charters explaining the critical financial situation.  Morris advised Charters to communicate to the Idaho State Bar that Morris would be willing to compromise.  One suggestion made by the Plaintiff was to offer to the ISB that Morris would write a letter acknowledging that the comments about Judge Winmill's hostility toward people of the Christian faith were OPINIONS and that the "jury rigging" was an opinion Mr. Morris formed on the basis of a transcript.  Mr. Charters was to therefore negotiate with ISB and communicate the financial stakes for Morris and the immediate need to conclude the investigation so that Morris could obtain employment in South Carolina and thereby save his home.

41.  ISB was aware of the immediate nature of Morris' need to conclude their open file and the damage their investigation had already done to Mr. Morris' family.  The letter from ISB in response to Mr. Charters' attempt to negotiate a resolution so that Morris could save his home all but confirms that ISB was fully aware that they had the power to destroy Morris.

42.  On August 9, 2023, Caralee Lambert, Assistant Bar Counsel of the Idaho State Bar wrote the following letter to Morris' counsel:

1

**From:** Caralee Lambert <clambert@isb.idaho.gov>
**Sent:** Wednesday, August 9, 2023 11:37 AM
**To:** Dustin Charters <WDC@powersfarley.com>
**Cc:** Joseph Pirtle <jpirtle@isb.idaho.gov>
**Subject:** ISB matter

Mr. Charters:

Thank you for reaching out today. The ISB Board of Commissioners reviewed the record in this matter at its July meeting and found probable cause to proceed with formal charges. The Board's primary concern related to Idaho Rule of Professional Conduct 8.2(a) and certain of the statements made about Judge Winmill. You are aware of those statements so I will not reiterate them here. I understand Mr. Morris's position regarding his First Amendment right to make statements about a federal judge, but nonetheless the Board believed, based on the record and relevant caselaw, that Rule 8.2(a) was implicated with respect to certain of those statements.

That said, Mr. Morris has advised that he has relocated out of state and that the pendency of this disciplinary grievance has affected his ability to move forward. I appreciate that and respect that Mr. Morris may not want a formal charge Complaint filed that would be a matter of public record, regardless of the outcome of the disciplinary case. Given this, and specifically considering Mr. Morris's cooperation in the investigation to date, Bar Counsel's Office would consider the option of Mr. Morris administratively resigning his Idaho license under Idaho Bar Commission Rule 305(e)(1). That Rule provides in relevant part: "An attorney who does not meet licensing requirements may voluntarily resign his or her membership in the Bar by submitting a written request to the Executive Director on a form provided by the Bar. An attorney with pending disciplinary matters may not voluntarily resign without Bar Counsel approval."

By such resignation, the disciplinary case would be dismissed because Mr. Morris would no longer have an Idaho license that could be subject to any sanction. Additionally, we would not be filing a formal charge Complaint outlining the allegations regarding the Winmill case, meaning it would not follow Mr. Morris publicly as he moved forward with new professional opportunities. I understand that the lawsuit in northern Idaho has taken its toll. An administrative resignation would perhaps close at least part of that chapter.

Please let me know if you have any questions regarding this option. If Mr. Morris elects to do so, he can forward a letter to the Executive Director advising that he wishes to administratively resign and at this time, Bar Counsel's Office would approve that request and thereafter close the disciplinary file without further action or any further response required from Mr. Morris. He could report to the South Carolina Bar (and any other jurisdiction) that he has no discipline and no pending disciplinary matters.

**Caralee A. Lambert | Assistant Bar Counsel**
Idaho State Bar
P.O. Box 895, Boise, ID 83701
(208) 334-4500 | fax:  (208) 334-2764 | www.isb.idaho.gov
clambert@isb.idaho.gov

43.  The letter by ISB officials was nothing less than a shakedown.  Morris could give up his license—his PROPERTY, and nobody would know that there was an investigation.  In so doing, perhaps he could obtain employment with a law firm, at least until obtaining a license in South Carolina.  However, if Morris refused to give up his property—his license—then Idaho

1    would make their investigation public and thereby make it virtually impossible to provide for his

2    family.  Mr. Morris rightly decided not to take the ISB's poison pill.

4      **From:** Jeremy Morris <jrmorris81@icloud.com>
       **Sent:** Tuesday, August 22, 2023 9:04 AM
5      **To:** Dustin Charters <WDC@powersfarley.com>
       **Subject:** Re: ISB matter

6      Dustin,

7      I reject this so-called offer.  If it's a life raft, it's a life raft that's going over a cliff into a fiery pit of
       hell.  No— I'll see them in the Idaho Supreme Court.  At least there, the public will watch officials totally
8      ignore MANDATORY authority from the 9th circuit.

9      Their "offer" that I just leave Idaho forever looks more like an extortion a mafia would use than an action by a
       state authority.  QUESTION: what would a FOIA do with respect to learning what these people knew and
       when and how they communicated with each other and potentially contacts with Judge Winmill or Winmill's
10     associates.  I would like all their email conversations preserved.

11     I'm also going to ask for a speedy hearing so that we can quickly get to the State Supreme Court.  If you are
       unable to help me with the Supreme Court, then I would ask if you could help me find an alternate attorney
12     capable of doing that with the remainder of the funds from the insurance company.  Or at least putting me in
       touch with the right person at the insurance company and a final bill from your office so that I know how much
       money we have to work with and that insurance company's contact who can help me locate a new
13     attorney.  Otherwise, if you are willing to go forward with the case, perhaps we have a strategy in which your
       office plans to help get me into state court and possibly provides me with an attorney "on that day."  There is
14     little need for an attorney at the disciplinary hearing which is already almost certainly a rigged event.

15     Jeremy
       (208) 964-5878

16        44.  The result was made clear in emails from Poulin Willey.  They were not going to hire

17    Mr. Morris with the investigation hanging over Morris' head.

19     **From:  Roy Willey** roy@poulinwilley.com                                    RW
       **Subject:**  Unfortunate News re: Associate Attorney Position @ PWA
20     **Date:**  August 7, 2023 at 1:50 PM
          **To:**  Jeremy Morris jrmorris81@icloud.com
21        **Cc:**  krystal.vargha@poulinwilley.com

22     Dear Jeremy,

       I would like to thank you for taking the time to discuss a potential role with us.

23     Unfortunately, it appears that your current bar complaint would have to be reported (even though it's a claims made policy, and even if
       you were in a non-lawyer position). That doesn't make a lot of sense to me, but that's how it works, and unfortunately we cannot have
24     that happen. As a result, once your bar complaint is favorably resolved I would encourage you to reach back out but would also
       understand if you found another opportunity in the mean time. I really wish there was a path forward at this time, but there simply is
       not.

25     Therefore, I regret to inform you that we have decided not to progress further with your application at this time.

26     Thanks again for your interest in our company.

       Roy

27

28

45. No future job offers ever came and Mr. Morris was forced to sell the 50 acre 235-year-old plantation. All the work Morris had poured into this dream property, which Morris was planning to pass along to his children, went to nothing. The restoration, wedding venue preparations, and marketing efforts were wasted. The property was sold by June 2024, just as the mortgage hardship extension concluded and foreclosure process was underway. *Exhibit 10*.



46. ISB, having stated their intent to bring formal charges in their August 9, 2023 letter and having issued an ultimatum to the Plaintiff to forfeit his license or else face those charges—Morris anticipated formal charges to soon follow. In the interim, Morris prepared to sell his South Carolina plantation after having lost the last job opportunity over the Idaho State Bar's actions.

47. In November 2023, just as Morris was informed by his counsel that formal charges from Idaho were imminent, Fox News in New York contacted Morris. The Plaintiff had appeared many times on Fox News, CNN, and other news programs over the years and in fact had close

contacts there.  But it was Fox News that initiated the contact over a desire to do an update story on the HOA lawsuit which was now on appeal before the 9th Circuit.  Morris offered to do an interview with Fox News—but not about the HOA lawsuit—rather, Morris offered a different news story.  This one was about how the Idaho State Bar had conspired to abuse its powers by eliminating Morris' ability to practice law there.

48.  When Morris provided the August 9th letter to Fox News—a letter the Plaintiff refers to as "the shakedown," the people at Fox News actually expressed doubt initially if the letter could be genuine.  What lawyer would include a threat of extortion IN WRITING over the issue of expressing speech about judicial corruption?  Morris conducted the 11-minute interview which aired on December 24th and December 25th 2023.  To Morris' surprise, it was the TOP story on Fox News for two straight days.  Morris was very familiar with being in national news coverage, but never as a top story—especially not on Christmas Eve when hundreds of millions of Americans are at home watching television.



## 'Christmas Lawyer' who went to war with his HOA is now facing another fight — the Idaho State Bar

Why the lawyer who 'saved Christmas' could face disbarment after his battle with HOA over holiday decorations

By Hannah Ray Lambert | Fox News

Published December 24, 2023 4:00am EST



'Christmas Lawyer' who went to war with HOA facing new fight

Fans compare him to Clark Griswold or call him the "Christmas Lawyer," while others use less nice names. But now Jeremy Morris says Idaho may strip his legal license.



Idaho State Bar

Officials Refused

To Answer Reporters'

Questions.



49.  The result of the coverage was that attorneys across the country reached out to Morris and urged him to take legal action against the Idaho State Bar, including, but not limited to: 1983 Civil Rights violations and the state Tort Claims Act.  Morris immediately filed notice with the Idaho Secretary of State within the 180-day deadline for Idaho Tort Claims.

50.  In the aftermath of the nationwide coverage, lawyers from Idaho began contacting Morris and horror stories they experienced at the hands of the Idaho State Bar.  Many of these victims described a penchant on behalf of the ISB where the agency would go through great efforts to weaponize ethics rules to target attorneys who engaged in First Amendment protected activities.

51.  Plaintiff eventually reached out to Brooks Witzke, who spent years in litigation against the ISB and suffered targeted retaliation similar what is occurring in the case at bar. Mr. Witzke, an immensely talented prospective lawyer from Delaware who passed the Delaware Bar exam in 2019, was prevented from being licensed in Idaho. After being denied, Witzke filed a lawsuit with this Court under the Americans with Disabilities Act ("ADA") to challenge the

Idaho admissions rule used to deny his license. *Witzke v. Idaho State Bar*, 643 F. Supp. 3d 1093 (D. Idaho 2022) ("*Witzke I*"). While *Witzke I* was pending, it appeared that Witzke was going to have success in his challenge to the rule, and once the ISB Defendants got wind of this, they chose to engage in unlawful conduct to retaliate against him for his act of seeking redress of his grievance.

52.  At the time, Witzke was employed as a judicial staff attorney in Southeastern Idaho for the Honorable Judge Mitchell Brown, and the ISB actors somehow found out where Witzke was employed and they proceeded to fabricate false allegations of a felony offense against him in order to (1) get Witzke terminated from his judicial appointment; and (2) cause him to be charged with a felony. Apparently, the ISB actors reported to both the Bannock County Prosecutor and Judge Brown that Witzke showed up to an ISB Board meeting and engaged in violent behaviors against ISB personnel and that the Pocatello Police had to come to physically drag Witzke out of the meeting.

53.  However, Witzke had a rock-solid alibi. Witzke spent the entire day in question inside the—well-surveilled and fully camera d'—Power County Courthouse in the presence of the elected Power County Prosecutor, Jason E. Mackrill, and his staff. This was many miles away from the ISB Board meeting. Once Witzke was terminated by Judge Brown and heard that a felony indictment was underway, he had Mr. Mackrill call the Chief of Police for Pocatello and the Bannock County Prosecutor's Office to tell them that Witzke's whereabouts could be established by the Power County Courthouse surveillance showing that Witzke never once left the building on the day in question. The Pocatello Police Chief also confirmed that on the day in question, the ISB never placed a call for service to law enforcement and that no police response ever occurred to the venue.

54. No charges were ever filed against Witzke, and a new First Amendment Retaliation case was filed against the ISB in this Court. In a prominent judicial opinion, this Court thoughtfully stated "the State Defendants were not motivated to retaliate against him until it became clear that *Witzke I* was a serious threat." *Witzke v. Idaho State Bar*, No. 1:22-cv-00478-REP, 2023 U.S. Dist. LEXIS 83534, at *33 (D. Idaho May 11, 2023). The ISB Defendants have a penchant for abusing the regulatory powers of the ISB to professionally attack and destroy those that engage in First Amendment activities that the Defendants personally dislike, regardless of how protected the statement is by the First Amendment.

55. In June 2025, one Idaho attorney contacted Mr. Morris and urged him to seek a RICO charge against the Idaho State Bar for a pattern of fraudulent behavior aimed at intimidating ideologically conservative lawyers.

56. Beginning in July 2025, Morris provided the FBI and U.S. Deputy Attorney for the District of Idaho, Kane Venecia, information related the Idaho State Bar's efforts to extort Mr. Morris over his license to practice law in an effort to protect Judge Winmill and silence Mr. Morris and other conservative lawyers.

57. Mr. Morris pointed out to U.S. Attorney Venecia how the Idaho State Bar's scheme could be similar to the FBI's July 2025 criminal referral to the DOJ of former CIA Director John Brennan and Director of National Intelligence James Clapper for knowingly using faulty intelligence to launch investigations into political rivals. In the days following Mr. Morris' conversations with the Idaho U.S. Attorney and FBI, Mr. Morris received a phone call from U.S. Attorney Venecia for Morris' date of birth in an effort to obtain records.

58. This lawsuit is being filed near the expiration of the 2-year statute of limitations allowed by the ITCA. In the two years since ISB stated they had already voted to have Morris

formally charged in their August 9, 2023 letter, ISB has taken no action against Morris. The abuse of their public office and fraudulent scheme to deprive the Plaintiff of his Constitutional rights to petition the government and maintain his own religious opinions was revealed to the world on Fox News that same year. The officers of ISB who operated under color of law in a deliberate attempt to scheme against those with whom they wished to silence was made clear for everyone to see in their shakedown letter that shocked attorneys across the United States.

## V. <u>CAUSES OF ACTION</u>

### COUNT I.

### 42 U.S.C. §1983, §1988

59.   Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 59.

60.   A §1983 action requires a plaintiff to prove that a person, acting under color of state law, deprived them of a right, privilege, or immunity secured by the Constitution or laws of the United States. In essence, §1983 requires a showing that a state actor (or someone acting like one) violated a federal right.

61.   ISB and its officers, acting under color of state law, deprived Plaintiff of his right to express an opinion, his right to freely petition the government for grievances (Morris publicly acknowledged reporting Winmill for misconduct in a formal filing to the Chief Judge of the 9th Circuit), and interfered with Morris' religious right to formulate an opinion on religious grounds (anti-Christian bigotry). ISB interfered with Morris' 4th Amendment right to his property and chilled his speech by creating a situation in which Morris could keep his livelihood and career, only if ISB took his license despite no legal justification for doing so.

1

2    **First and Fourth Amendment Violations Pursuant to 42 U.S.C. §1983**

3        62.   Plaintiff hereby reincorporates and adopts each and every allegation in the preceding

4    paragraphs numbered 1 through 62.

5        63.   ISB, through its officers and agents collaborated to deprive the Plaintiff of his First

6    and Fourth Amendment rights as guaranteed under the Fourteenth Amendment.  *See Count III.*

7    *(§1983 above).*  ISB knew the speech about Judge Winmill stemmed from a grievance filed with

8    the 9th Circuit.  Morris communicated by phone to Mr. Pirtle directly that it was Morris'

9    OPINION that Judge Winmill was an anti-Christian bigot.  Morris further clarified over the

10   course of a 15-page Answer that it was his OPINION.  ISB stated they were proceeding with

11   formal sanctions with not a word explaining how this is not an opinion.  Moreover, ISB fully

12   ignored mandatory authority promulgated by the 9th Circuit that Mr. Yagman had a

13   Constitutional Right to call a judge an "antisemite." No response from ISB—only a decision to

14   take Morris' property.  Finally, Morris claims that it is the religious right of Mr. Morris to make

15   judgments about who is a non-Christian and their anti-Christian motivations.

16       64.   Lastly, Plaintiff's equal protection rights were violated.  The ISB and its officers

17   were acutely aware that the 9th Circuit confirmed that attorney Yagman possessed <u>broad</u> exercise

18   of free speech as a lawyer with respect to judges.  The Court acknowledged that accusing the

19   judge of a bias based solely on Yagman's opinion that the judge was "antisemitic" is protected

20   OPINION.  Here's the equal protection claim:  Does the Idaho State Bar only protect the right of

21   Jews like Yagman to complain about religiously motivated bias or are Christians included in that

22   too?  From the first phone call between Morris and Joe Pirtle, Bar Counsel of ISB and continuing

23   with many months of discourse between Morris' attorney and ISB, the claims made by ISB that

somehow "anti-Christian bigot" and "antisemite" are mysteriously yet inherently different is belied by a judicial system long governed by aversion to equal protection violations.

## Conspiracy to Retaliate Against Plaintiff's
## First Amendment Rights Pursuant to 42 U.S.C. §1983

65.  Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 65.

66.  It is beyond dispute in our Circuit that a state entity who takes retaliatory actions against an individual because that person previously filed against it an ADA/Rehabilitation Act lawsuit is the very essence of an actionable retaliation claim.  See *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014); see also *Barker v. Riverside Cty. Office of Educ.*, 584 F.3d 821, 826-27 (9th Cir. 2009). To state a prima facie case for retaliation, plaintiffs must show (1) that they engaged in protected activity; (2) that they suffered a materially adverse action either after or contemporaneous with their protected activity; and (3) a causal connection between the protected activity and the adverse action. *Id*. "In this context, an adverse action is an action taken by an individual that 'might have dissuaded a reasonable person from making or supporting a charge of discrimination.' *Id*. (quoting *Duvall v. Putnam City Sch. Dist.*, 530 Fed. Appx. 804, 810 (10th Cir. 2013)). "As for the third element, '[c]ausal connection may be established by producing evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Id*. (quoting *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1133 (10th Cir. 2010)). 145.

67.  **Protected Activity.**  In this case, Plaintiff engaged in a protected activity when he spoke freely to the public about his opinions about Winmill's religious animus toward Morris as a Christian and in the view of Morris, how Winmill had treated other Christians in his court for

years.  Those protected opinions belonged to Morris' own conscience and Morris was free to

share them.  Plaintiff was also engaged in protected activity when he spoke in relation to the

grievance he filed against Winmill for misconduct.  Even in Yagman, who was protected in

saying far more about a California judge, Yagman never claimed to have filed misconduct

against that judge.  Morris' speech would have been protected even without filing the

grievance—but the misconduct allegation against Judge Winmill is precisely why ISB targeted

Morris in the first place.

68.  **Adverse Action.**  Morris also suffered a materially adverse action after the protected

activity.  Morris literally feared IN WRITING that the Idaho State Bar would do what they

actually did (attempt to take his bar license and destroy Morris' livelihood).

69.  **Causal Connection**.  Morris can show a causal connection between the protected

activity and the adverse action because ISB included that connection in their letter.  On the face

of ISB's letter dated January 17, 2023 (Exhibit 1), ISB correctly quotes the Plaintiff.  "the

corrupt, Federal Judge Winmill, who tried to rig a jury, who's now facing a <u>misconduct charge</u>

<u>that I filed against him</u>." *Exhibit 1, Par. 1*.  It doesn't get any clearer than that.  ISB

acknowledged that their contrived investigation was being pursued on the basis of speech

ASSOCIATED WITH WHAT MORRIS DID TO JUDGE WINMILL.


**COUNT II**

**Violation of I.C. sections 6-901, et seq. (ITCA)**


70.  Plaintiff hereby incorporates and adopts each and every allegation in the preceding

paragraphs numbered 1 through 70.

71.  The Idaho Tort Claims Act (ITCA) outlines specific requirements for pursuing claims against governmental entities in Idaho. Notice must be filed within 180 days of the injury or its discovery. This notice must include details about the incident, damages, and involved parties.  Exhibit 4.  ITCA applies to claims against the state, its departments, counties, cities, and their employees. The ITCA waives governmental immunity.  A claim must demonstrate that the claimant was injured or their property damaged by a government employee acting within the scope of their duties and negligently or wrongfully.

72.  ISB, by and through its agents, did knowingly and willfully under color of law and through use of their office, threaten to deprive Morris of his license, and knowingly cause Mr. Morris to suffer harm in obtaining work with no Constitutional justification. Mr. Morris suffered the loss of a job offer, his 50-acre property, his wedding venue business, restoration costs on the 1790 Plantation, marketing, website, and incorporation costs, and moving costs.

73.  In addition to tangible losses, Plaintiff suffered enormous reputational harm.  While Defendants may allege that this reputational harm stems from the Plaintiff providing the letter to Fox News, Plaintiff had no choice but to provide the letter to the media in an effort to expose ISB's actions.  While publication of the letter had the intended effect of ending the ISBs decision to formally charge the Plaintiff for the exercise of his protected rights, the consequence of exposing this scheme was that Plaintiff is forever associated with disbarment.  A simple google search of the Plaintiffs name almost immediately includes the word disbarment.  The search engine association of Morris' name and the word "disbarment" will continue to impact Plaintiff's ability to obtain gainful employment for the rest of his life.  The fact that ISB tainted Plaintiff and then dropped the case indicates administrative remedies have been exhausted.

**COUNT III.**

**I.C. section 19-3924 Malicious Prosecution**

74.   Plaintiff hereby incorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 74.

75.   To establish a civil claim for malicious prosecution in Idaho, a plaintiff must prove the underlying case ended in their favor, the defendant initiated it without probable cause, and did so with a malicious purpose. The plaintiff must show the defendant's actions were oppressive, fraudulent, or malicious, and that they suffered actual damages, such as financial loss or damage to reputation.

**1)  Plaintiff must prove the underlying case ended in their favor.**

76.   ISB <u>decided</u> to pursue formal charges against Morris according to the August 9, 2023 letter.  Almost two years after the Fox News exposé on alleged corruption at the Idaho State Bar (seen by tens of millions of viewers), ISB did not sanction Morris, thus Morris prevailed. Moreover, under Idaho law, a licensing board can be civilly liable for malicious prosecution as the powers of the ISB are considered prosecutorial powers.

**2)  Defendant initiated the prosecution without probable cause and with malicious purpose.**

77.   ISB refused to even explain how Morris violated the rules.  Morris provided a 15-page answer to ISB's allegation.  ISB <u>never</u> answered a single legal argument.  Rather, ISB merely stated that they understood our position on the First Amendment and simply disagreed. No discussion of *Yagman*.  No explanation why *Yagman* could call a judge an "antisemite" and "right-wing fanatic," but somehow Morris could not call Judge Winmill an anti-Christian bigot. Simply put, ISB's position in the clearest and EMBARRASSING terms was essentially: "because we said so."  That is NOT probable cause.  And they knew it as evidenced by their

dropping the case after being exposed on television.  Morris accused ISB of providing cover for Judge Winmill; two years later, ISB has never denied that accusation.

### 3) Defendant's actions were oppressive, fraudulent, or malicious.

78.  ISB, through its officers—acting under the color of law, made the decision to pursue charges.  They dropped that decision when a shakedown letter was viewed by millions of Americans and lawyers across the country reacted to that letter in shock.  ISB's acts were oppressive because ISB and its officers were fully aware that there was no legal basis whatsoever to pursue the investigation against Morris, when Morris provided a 15-page letter explaining how there was no legal basis ISB officers provided NO explanation as to why Morris was wrong (in essence, "because we said so"), and, having knowingly decided (past tense "decided") to pursue formal charges against Morris with full knowledge that this baseless charge would destroy Morris financially, nonetheless intimated that any failure to accept ISBs terms would mean Morris would forfeit  his livelihood elsewhere in other states if he didn't forfeit his license in Idaho.  The fraud became all-the-more evident when, as Morris' attorney indicated ISB was imminently filing their formal charge, Fox News reported on the incident for two straight days as their TOP story.  ISB's officers never filed charges and two years have elapsed.

### 4) Plaintiff suffered actual damages.

79.  Joe Pirtle was fully aware of the damage they were inflicting.  They even acknowledge that damage in their letter by noting Morris lived in South Carolina and might want to become licensed there.  Moreover, Morris informed ISB through counsel that without resolution, he would lose his job offer and with it, his home.  Morris lost his 50-acre property.

**COUNT IV.**

**Idaho Code §18-7803 Idaho's Racketeering Act,**
**18 U.S.C. §1961 and §1964 Civil Remedies for Racketeering**

80.  Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 80.

81.  To succeed in a civil RICO (Racketeer Influenced and Corrupt Organizations Act) claim, a plaintiff must prove that the defendant engaged in a pattern of racketeering activity connected to an enterprise, and that this activity caused injury to the plaintiff's business or property. This requires demonstrating that the defendant committed at least two predicate acts of racketeering within a 10-year period, that these acts were related and continuous, and that the defendant played a role in the enterprise's affairs.

82.  Plaintiff acknowledges that a civil claim in RICO may be rare.  However, at the urging of at least one anonymous attorney unidentified anywhere in this Complaint, Plaintiff nonetheless includes this claim.  The Defendants are officers, former officers or agents of ISB, or non-agents who acted in concert in a conspiracy between those agents and non-agents to deprive the Plaintiff of his property under false and contrived pretenses.  Brooks Witzke, a brilliant legal mind and resident of Idaho was falsely accused by ISB officials of illegal behavior when Mr. Brooks was not even at the location claimed.  *Witzke v. Idaho State Bar, Board of Commissioners* case No. 1:22-cv-00478.  Mr. Pirtle, acting as ISB counsel, made intimidating and/or harassing comments to Mr. Brooks and upon receiving an off-color response from Mr. Brooks, provided that response to the Delaware State Bar.

83.  In sum, ISB, through its current and former officials acting in concert with other named Defendants as an enterprise, knowingly and illegally conspired to use their positions with

the Idaho State Bar to deprived or attempt to deprive: Jeremy Morris, Brooks Witzke, and other yet unknown subjects— their right to their livelihoods and Constitutional rights.  This activity caused injury to Morris (and other affected victims) of his businesses and property.  The ISB Defendants committed at least two predicate acts of racketeering within a 10-year period as required under RICO, thus Plaintiff believes this Court will find ISB guilty as charged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray that the Court grant injunctive relief set forth herein and award such damages to the Plaintiff as is reasonable, just and necessary.

A.    That this Court provide Declaratory Relief by reaffirming *Standing Committee on Discipline v. Yagman*, 55 F.3d 1430 (9th Cir. 1995) and declare that an attorney's freedom of speech is sacrosanct—even when criticizing the judiciary—whether by exposing misconduct or by stating a religiously grounded opinion for why that misconduct may have occurred, and that Plaintiff's statements about Judge Winmill are protected by the First Amendment.

B.    That this Court issue a Preliminary Injunction enjoining the Defendant, Defendant's officers, agents, employees and all other persons acting in concert with them, from acting in any manner so as to deprive Plaintiff of his license to practice law in Idaho on the basis of Plaintiffs' free speech in the statements about Judge Winmill.  That this Court act as a monitor should ISB retaliate against Plaintiff for filing this lawsuit.

C.    That this Court award Plaintiff damages in the amount of TEN MILLION DOLLARS ($10,000,000) and any other such damages as are reasonable and just under the

circumstances as a direct and proximate result of the Defendant's violations of Plaintiff's rights.  ITCA damage awards are capped at $500,000. Federal section 1983 actions in civil rights cases supersede many of the sovereign immunity claims by state agencies.  In Idaho, malicious prosecution claims are limited to $250,000 non-economic damages remedies, but sets no limit on economic damages;

D.    That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

E.    That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order;

F.    That when *pro se* Plaintiff hire counsel, this Court award Plaintiff the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. §1988;

F.    That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Dated: August 11, 2025

/s/  Jeremy Morris
Jeremy Morris, Esq.
Idaho Bar No. 8500
PO Box 891
Hardy, Virginia 24101
Tel: (208) 964-5878
jrmorris81@icloud.com

*pro se Plaintiff.*

VERIFCATION

I verify under penalty of perjury that to the best of my knowledge the foregoing is true.

_____                    Executed on _____
Jeremy Ray Morris                                                                    August 11, 2025
Idaho State Bar No. 8500