EXHIBIT 6

Judge Winmill – Judicial Misconduct Filing
Dated: June 2, 2021

Judicial Council of the Ninth Circuit

# COMPLAINT OF JUDICIAL MISCONDUCT OR DISABILITY

To begin the complaint process, complete this form and prepare the brief statement of facts described in item 5 (below). The RULES FOR JUDICIAL-CONDUCT AND JUDICIAL-DISABILITY PROCEEDINGS, adopted by the Judicial Conference of the United States, contain information on what to include in a complaint (Rule 6), where to file a complaint (Rule 7), and other important matters. The Ninth Circuit Judicial Council also adopted local misconduct rules. The rules are available in federal court clerks' offices, on individual federal courts' Web sites, and on www.uscourts.gov, and https://www.ca9.uscourts.gov/misconduct/judicial_misconduct.php.

Your complaint (this form and the statement of facts) should be typewritten and must be legible. Under the Ninth Circuit's local misconduct rules, you are required to file five copies of your misconduct complaint and exhibits, plus one copy for each additional judge if more than one subject judge is named in your complaint. Enclose your complaint in an envelope marked "COMPLAINT OF MISCONDUCT" or "COMPLAINT OF DISABILITY" and submit it to the appropriate clerk of court. **Do not put the name of any judge on the envelope.**

1. Name of Complainant: Jeremy Ray Morris
   Contact Address: 13111 N. Ferndale Drive
   Hayden, Idaho 83835

   Daytime telephone: (208) 964-5878

2. Name(s) of Judge(s): B. Lynn Winmill
   Court:

3. Does this complaint concern the behavior of the judge(s) in a particular lawsuit or lawsuits?
   [✗] Yes        [ ] No

   If "yes," give the following information about each lawsuit:
   Court: U.S. District Court of Idaho
   Case Number: 2:17-CV-00018
   Docket number of any appeal to the 9th Circuit: 19-35390

   Are (were) you a party or lawyer in the lawsuit?
   [✗] Party        [✗] Lawyer        [ ] Neither

Page 1 of 3

If you are (were) a party and have (had) a lawyer, give the lawyer's name, address, and telephone number:

Brian Locker, Fowler / St. Clair

1172 Amber Park Drive, STE 160, Alpharetta, GA 30009

(678) 310-8868

4. Have you filed any lawsuits against the judge?

    [ ] Yes          [✻] No

If "yes," give the following information about each such lawsuit:

Court: _____

Case Number: _____

Present status of lawsuit: _____

Name, address, and telephone number of your lawyer for the lawsuit against the judge:

_____

_____

_____

Court to which any appeal has been taken in the lawsuit against the judge:

_____

Docket number of the appeal: _____

Present status of the appeal: _____

5. **Brief Statement of Facts.** Attach a brief statement of the specific facts on which the claim of judicial misconduct or disability is based. Include what happened, when and where it happened, and any information that would help an investigator check the facts. If the complaint alleges judicial disability, also include any additional facts that form the basis of that allegation. Local Rule 6.1(b) provides that your statement of facts must not be longer than five pages (five sides), or 1,200 words, whichever is less.

**You must provide objectively verifiable proof such as the names of witnesses or recorded documents or transcripts to support your allegations.** Adverse rulings do not support misconduct allegations, as the appropriate forum for an argument that a judge erred is the appellate court. Thus, you need not include copies of your filings in the underlying case or the judge's orders because even if a review of those documents is necessary, the documents are accessible via PACER. Excess or irrelevant documentation will be returned to the complainant.

**6.     Acknowledgment, declaration and signature:**

**In the space provided below, please write the following statement: "I understand that even if I successfully prove that the judge engaged in misconduct or is disabled, this procedure cannot change the outcome of the underlying case." (If this statement is not written, your complaint will not be processed and will be returned to you.)**

I understand that even if I successfully prove that the judge engaged in misconduct or is disabled, this procedure cannot change the outcome of the underlying case.

I declare under penalty of perjury that the statements made in this complaint are true and correct to the best of my knowledge.

(Signature) _____    (Date) __June 2, 2021__

NOTE:

There are three lawyers who were part of the case:
1. Brad Miller
(480) 637-0240
1201 S. Alma School Rd., Mesa, AZ
brad@bradlmiller.com

2. Brian Locker
(678) 310-8868
1172 Amber Park Dr., STE 160, Alpharetta, GA 30009
locker@fowlerstclair.com

3. Jeremy R. Morris  (me)
(208) 964-5878
13111 N. Ferndale Drive, Hayden, Idaho, 83835
jrmorris81@icloud.com
I am also a co-plaintiff in the same case.

# COMPLAINT OF JUDICIAL MISCONDUCT OF

# JUDGE B. LYNN WINMILL

**ATTN: CHIEF JUDGE OF THE 9TH CIRCUIT COURT OF APPEALS**

| | |
|---|---|
| MR. JEREMY MORRIS<br>MRS. KRISTY MORRIS,<br><br>       Plaintiffs,<br><br>v.<br><br>WEST HAYDEN ESTATES FIRST ADDITION HOMEOWNERS ASSOCIATION, INC., an Idaho Corporation.<br><br>       Defendant. | Civil No. 2:17-CV-00018-REB<br><br>**AFFIDAVIT OF<br>JEREMY R. MORRIS** |

I, JEREMY R. MORRIS, hereby state under oath and under penalty of perjury pursuant to 28 U.S.C. §1746 of the laws of the United States of America, that I am competent to testify to the matters herein, that the statements are based on my personal knowledge and that the following information is true:

1. I currently reside at 13111 N. Ferndale Dr., Hayden, ID 83835

2. On October 22, 2018, Judge B. Lynn Winmill began jury selection in a case brought against a Homeowners Association for religious discrimination and a cross claim against the plaintiffs for alleged violations of the CCRs.

COMPLAINT FOR JUDICIAL MISCONDUCT    1
AFFIDAVIT OF JEREMY R. MORRIS                                            Initial

3.     During voir dire, juror number 11 states, "I kind of hold [CCRs] in a high esteem. So, I feel like I would probably be a little prejudiced in that way." (Page 28, line 16-17). Attorney Miller pleaded with the court, "[she] has already stated--she actually used the word, 'prejudiced' herself. That she would be prejudiced for the HOA." (pg. 71, line 23-24). But Judge Winmill responded, "just using the word "prejudiced" once isn't enough to be a challenge for cause." (pg. 72, line 22-23). But much later, on page 97, juror number 11 she had been involved in discussions about the present case with HOA managers. Number 11 worked with HOAs and had been instructed previously to always "err on the side that the HOA covenants are correct and the homeowners are wrong." (pg. 97, line 20-21). Juror 11 then stated, "I would come into it with a bit of **bias** that way." (pg. 97, line 22). When pressed by plaintiffs' counsel on what she meant by prejudice involving a a case like this no. 11 said, "I would be actually more **prejudiced**, I guess, against the homeowner. Because we have so many homeowners that come and feel like they are special and they don't have to abide by the CC&Rs because they have these extenuating circumstances that don't apply to them." Counsel for the plaintiff continued, "Now, when you say '**prejudice**,' I'm just trying to understand kind of your analysis of how you walk through some of these questions. Are you saying that when somebody brings a complaint to you, now that you're a member of the board, that your initial thought is that the homeowner is probably wrong?" Number 11 replied, "That's correct." (pg. 97, line 24-25 and pg. 98, line 1-13). Despite creating the rule that saying "prejudice" only one time was not grounds for removal, the juror subsequently repeatedly used the word "prejudice," "bias," and that it was correct that it is assumed a homeowner is always wrong.

COMPLAINT FOR JUDICIAL MISCONDUCT     2
AFFIDAVIT OF JEREMY R. MORRIS                                                                                                             Initial

4.     On page 64, prospective juror no. 2 stated, "My whole point is the religious aspect here; because I don't believe in it, so I don't care to hear about it." Judge Winmill replied, "Okay, let me just--you have not raised your hand in response to other questions. So, I'm assuming you feel you could be fair and impartial. But given a choice, you just as soon not get involved in what might kind of be a ---hear about some religious issues?" No. 2 said, "Exactly. I don't want to be involved in it." Plaintiff Kristy Morris, attorney Brad Miller, and myself were stunned that the judge was almost pleading with Juror No. 2 at this point to remain after No. 2 had made it clear he wanted nothing to do with Christians because, "[he] didn't believe in it." But the judge's tone turned almost to <u>begging</u> when the judge continued. "Okay. But you're confident you could be fair and impartial if you were picked? (pg. 64, line11). Juror No. 2: "Yeah--no. No." Still Judge Winmill pressed on: "Okay. All right. What we ask jurors to do--and not all jurors can do it--but we ask jurors to put aside their personal feelings, and even if they may have strong-you know, I-you know, one of the other jurors is a minister in a church, but he has indicated he feels he could put that aside, apparently and be fair and impartial. But some jurors may just have strong feelings, one side or the other, that you feel you just can't put aside. So, juror No. 2, you're concerned that you just--you have pretty strong feelings about religion and --" Juror No. 2: "Yes, sir." (pg. 64, line 22). The judge kept going--getting ever more desperate in his tone, "feel like it would be hard for you to be fair and impartial." Juror 2: "Yes sir." (pg. 64, line 25. It became clear to the Plaintiffs and the Plaintiffs' counsel that the judge was begging a prospective juror to remain despite his continued insistence that he could not be fair.

COMPLAINT FOR JUDICIAL MISCONDUCT     3
AFFIDAVIT OF JEREMY R. MORRIS                                                             Initial

5. Plaintiffs' counsel Brad Miller engaged in numerous sidebars with Judge Winmill during voir dire. Each time, Plaintiffs counsel returned to the table where I was sitting with co-Plaintiff Kristy Morris, and explained how unusual all of this behavior was. Mr. Miller told Plaintiffs that in his many, many trials, he had never seen a judge in state or federal court act in this manner. Those actions include, but are not limited to: refusing to remove a potential juror for words like "bias" and prejudice."

6. After the jury had been seated and the trial was underway, Judge Winmill announced to the court that the jury would not be permitted to decide the counterclaim.

7. Judge Winmill prevented my lawyer, Brad Miller, from making most of the arguments we had prepared for our <u>own</u> case. Our case was essentially that through a writing and then years of harassment and tape-recorded admissions, the HOA engaged in discrimination and violated Fair Housing. But the Defendant HOA claimed their actions were not discriminatory (despite letters referencing our religion and tape-recorded admissions). They said their actions were merely efforts to maintain the CCRs. But because Judge Winmill informed the court that he alone would decide the counterclaim, he then used that ruling to justify preventing the plaintiffs from arguing their case. In effect, the Plaintiffs were not only prevented from openly defending themselves in open court from allegations such as that they were "raising, breeding, or keeping a camel," but Plaintiffs were prevented from arguing their own case as well. Evidence relating to <u>selective enforcement</u> of the CCRs, which is the backbone of a fair housing claim was repeatedly denied on this basis. Even witness questioning that led in the direction of discussing how the Morris family was singled out was also denied because Judge

Winmill said these things were related to the counterclaim which he said he was no longer going to allow the jury to decide.

8. Judge Winmill struck down testimony of the majority of the Plaintiffs' witnesses on the basis that they were discussing "third-party conduct" even though Judge Winmill admitted that HUD rules actually allowed HOAs to be held accountable for the third-party conduct of others if the HOA had it within its control to take an action and didn't. Four women testified to various forms of being assaulted including being chased, having a car kicked, cussed at, pushed, and threatened. Their testimony was struck in its entirety despite ruling by HUD and other circuit courts that have ruled such evidence can be considered.

9. When attorney Brad Miller attempted to inform the judge that one of the women who testified actually had evidence of <u>direct</u> harassment from an HOA Board member (and not a third-party HOA member), the Judge insisted he had already made his decision and the witness' entire testimony would be struck.

10. When attorney Brad Miller attempted to inform the judge that the owner of a bus company had already given testimony of <u>direct</u> harassment from an HOA Board member (and not a third-party HOA member), the Judge insisted he had already made his decision and the witness' entire testimony would be struck.

11. Judge Winmill engaged in a lengthy discussion about a death threat videotape. The judge spent significant time discussing why he would not allow the tape of the death threat to be seen by the jury--and he allowed the jury to remain in the courtroom during this

discussion. Judge Winmill used this discussing that Judge Winmill decided to deliberate at length in the presence of the jury, to later justify the rule 50B motion as probably a motivating factor for the jury making the wrong decision--as the judge saw it. In noting the death threat video discussion in his order overturning the jury, Judge Winmill also stated it was "not even a death threat" without writing what the HOA member actually said: "I'm going to take care of you" Plaintiff: "What does that mean?" HOA Member: "Maybe that means I'm gonna give you a hug."

12. The jury sat for 15 hours over 2 days deliberating. After more than 14 hours, the jury sent the judge a question, they immediately delivered a verdict. The verdict was unanimous on all 4 claims: The HOA had discriminated before and after the sale (3604b), the HOA sent a writing indicating a religious preference against the Morris family (3604c), and the HOA had engaged in harassment on the basis of the Morris family's religion.

13. Five months after the unanimous jury verdict on all 4 claims, Judge Winmill reversed the jury and ordered the Morris family to pay the HOAs attorney fees which the HOA stated were $111,000. He also ordered the Morris family terminate their Christmas program.

14. In his order, Judge Winmill acknowledged his ruling reversing the unanimous jury would be challenged by the 9th circuit and that he has never overturned a jury under rule 50b in 31 years on the bench.

15. Judge Winmill wrote in his order that "within minutes of the bailiff relaying the court's answer to the jury, the foreperson contacted the bailiff to announce that the jury had

reached a verdict." (Order, Pg. 22). But anyone reading this would not know that the jury actually deliberated for 15 hours.

16. The Order confirms that rule 50b does not allow the Court to overturn a jury verdict on the basis of "credibility," but Judge Winmill stated that Mr. Morris was not "credible" and had "multiple inconsistencies"--only providing one example: the date of the program. But the show was visited by thousands of people. The date of the program was never in question. The only example of an inconsistency was factually wrong.

17. Judge Winmill said the testimony of HOA President Jennifer Scott "was credible" despite the fact that tape recorded evidence played at trial demonstrated that she <u>clearly</u> lied under oath.  Scott admitted in a tape-recorded phone conversation that the HOA discriminated against the Morris family and that she had shared this with the HOA Board. Unaware of the existence of this tape, she was asked during her Deposition whether such an admission ever occurred. She said, "no." Asked whether she had ever even had the belief there was discrimination, she said, "no."  Three days later, these tapes were made available to the HOA. At trial, Mrs. Scott continuing this lie despite the tape being played in Court.  After the unanimous jury verdict for the Plaintiffs, at a "Lincoln Day Dinner" at the Coeur d'Alene resort in February 2019, I discussed with a county prosecutor whether Mrs. Scott should be prosecuted for perjury. Over the next few days, I was asked by County Prosecutor Barry McHugh to file a police report regarding her unequivocal perjury as the tape recording contradicted her testimony explicitly.

18. Judge Winmill stated that the Morrises violated rules that prevent homeowners from raising, breeding, or keeping livestock. It was established at trial that the Morrises do not

COMPLAINT FOR JUDICIAL MISCONDUCT   7
AFFIDAVIT OF JEREMY R. MORRIS                        Initial ____

own a camel. They do not raise, breed, or keep livestock. Despite "raise, breed, keep" being a term of art taken together, Judge Winmill isolated the word, "kept" in his order and changed the meaning so that even a camel standing on property for 2 hours now constituted "keeping" livestock. This despite evidence and testimony that other neighbors have had ponies for birthday parties.

19. Judge Winmill ignored the vast number of violations of neighbors including, but not limited to: illegal annual firework shelling of the neighborhood through midnight, photographs of multiple HOA members <u>actually keeping</u> more than 2 domestic animals (an actual violation of the rules), no one in the neighborhood getting permission to decorate, signs in yards, and dozens of other examples.

20. The Judge cited Section 5.4.15 of the rules that exterior lighting to be "restrained in design, and excessive brightness shall be avoided." The Judge stated the Plaintiffs' "<u>design</u>" was unrestrained and excessive. Unto itself, the word "design" is nonsensical as applied to Christmas lights. But the judge was well-aware that the section applied to FIXTURES. In a brief, the Judge was aware that the provision stated, "architectural lighting; fixtures."

21. The Judge omitted actual, major violations by HOA members, but attributed numerous, other violations to the Morrises that did not exist under even the most imaginative interpretation.

## CONCLUSION

Judge Winmill allowed a juror to remain on a jury after proclaiming she was prejudiced and biased. He all but begged for another juror to remain on the jury who had made it clear he was antagonistic toward religion. Judge Winmill removed the counterclaim from the jury after jury. He withheld evidence improperly. And when the jury was still unanimous, Judge Winmill overturned the jury on the basis of credibility--despite open indisputable perjury from a witness that Judge Winmill said was credible. Finally, Judge Winmill knowingly attributed violations of HOA rules to my family that did not exist, while ignoring a vast number of violations of HOA members that actually did exist.  Through Judge Winmill's actions involving jury selection, his <u>tone</u> throughout the trial, his overall demeanor to Plaintiffs' counsel, and is either knowingly-false or otherwise reckless recitation of the facts in his order--which failed to even acknowledge an ADMISSION by the HOA, it is my sincere belief that Judge B. Lynn Winmill violated Rule 40.3 of the U.S. Court of Federal Claims in which complaints may be filed against "any judge of the court who has engaged in conduct prejudicial to the effective and expeditious administration of the business of the court."

**Copies of Transcripts cited in this Affidavit are affixed, hereto.**

DATED this 2nd day of June 2021

_____
Jeremy R. Morris

SUBSCRIBED AND SWORN TO before me this ____ day of June 2021, by Jeremy R. Morris who presented documentation sufficient for me to verify his identification

_____
**Notary Public for Idaho**

COMPLAINT FOR JUDICIAL MISCONDUCT        9
AFFIDAVIT OF JEREMY R. MORRIS                                                     Initial _____