RAÚL R. LABRADOR
ATTORNEY GENERAL

JAMES E. M. CRAIG, ISB #6365
Civil Litigation and
Constitutional Defense

David J. Myers, ISB #6528
Kyle D. Grigsby, ISB #10709
Deputy Attorneys General
Office of the Attorney General
P. O. Box 83720
Boise, ID 83720-0010
Telephone: (208) 334-2400
Facsimile: (208) 854-8073
james.craig@ag.idaho.gov
david.myers@ag.idaho.gov
kyle.grigsby@ag.idaho.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF IDAHO**

JEREMY RAY MORRIS,

*Plaintiff,*

*v.*

IDAHO STATE BAR, JILLIAN CAIRES, CARALEE LAMBERT, JOSEPH PIRTLE, JOEL HAZEL, MOLLY O'LEARY, and JOHN DOES 1-100,

*Defendants.*

Case No. 1:25-CV-446-AKB

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

## INTRODUCTION

Plaintiff's Christmas displays in Hayden, Idaho, resulted in controversy with his neighbors and his homeowners' association, which led to a lawsuit and countersuit between them. A trial in federal district court resulted in a jury verdict for Plaintiff, followed by an order setting aside the verdict, followed by a partially successful appeal, and—recently—a settlement and dismissal. *Morris v. W. Hayden Est. First Addition Homeowners Ass'n, Inc.*, 104 F.4th 1128 (9th Cir. 2024); *Morris v. W. Hayden Est. First Addition Homeowners Ass'n, Inc.*, No. 2:17-cv-00018-BLW (D. Idaho), Dkt. 165 and 166. At various times following the initial trial, Plaintiff made certain statements about the presiding judge, Hon. B. Lynn Winmill, that others reported to the Idaho State Bar (ISB). Dkt. 31 ¶¶ 36–37; Exs. 7–8. The ISB opened an investigation as a matter of course that remains pending. *Id.* ¶ 26; Exs. 1, 7–8. The ISB has not yet elevated the matter to any formal charges and has kept its proceedings confidential, as is its duty. *Id.* ¶¶ 45–46; Exs. 3, 5.

Before the ISB opened its investigation, Plaintiff had already moved to South Carolina and begun the process of purchasing property there, intending the move to be permanent. *Id.* ¶¶ 25–26 ("potentially start a new life by turning [the property] into a wedding venue to offset restoration costs"); Ex. 1. After the investigation began, Plaintiff sought employment with a law firm in South Carolina. *Id.* ¶¶ 43–44, 47. The pendency of the disciplinary investigation presented an obstacle, which Plaintiff and the ISB unsuccessfully attempted to negotiate. *Id.* At that point, Plaintiff discussed the ISB investigation on a national television news channel and raised the specter of disbarment. *Id.* ¶ 51. Plaintiff eventually filed a Notice of Claim under the Idaho Tort Claims Act, *id.* ¶ 52, and subsequently filed this lawsuit against the ISB and three of its staff (the ISB Defendants), as well as the two individuals who reported Plaintiff's statements to the ISB.

## PLAINTIFF'S AMENDED COMPLAINT

On August 11, 2025, Plaintiff filed his Complaint. Dkt. 1. On October 25, 2025, Plaintiff filed his Amended Complaint. Dkt. 31.

Plaintiff's Amended Complaint asserts federal and state law causes of action against the ISB, two ISB employees, and a former ISB bar commissioner ("ISB Defendants"). Count I, under 42 U.S.C. § 1983, asserts First and Fourth Amendment violations, an Equal Protection violation, and conspiracy to retaliate against Plaintiff's First Amendment rights. Count II asserts a standalone violation of the Idaho Tort Claims Act. Count III asserts malicious prosecution under Idaho law. Count IV asserts racketeering violations under both federal and Idaho statutes. Plaintiff claims that he has been unable to become a member of the South Carolina bar due to the pending investigation, that he has been unable to find a job due to the pending investigation, and that as a result he had to sell his property in South Carolina.

The Amended Complaint alleges only the following about the ISB Defendants' involvement in this multi-year history:

1. In December 2021, the ISB received complaints from Defendants Hazel and O'Leary regarding Plaintiff's statements about Judge Winmill. Dkt. 31 ¶¶ 36–37; Exs. 7–8.
2. In January 2023—after Plaintiff had already relocated to South Carolina and already intended to purchase his South Carolina property—the ISB had its first contact with Plaintiff, notifying him that it was aware of his statements about Judge Winmill and requesting that he "please respond to *whether* you made statements with reckless disregard as to the truth or falsity concerning the qualification or integrity of a judge,"

referring to Rule 8.2(a) of the Idaho Rules of Professional Conduct (IRPC). *Id.* ¶ 26; Ex. 1 (emphasis added).[1]

3. On March 15, 2023, the ISB received Plaintiff's formal response, by which time Plaintiff had completed the purchase of the South Carolina property (in February 2023). *Id.* ¶ 33; Ex. 2; Ex. 10.

4. Plaintiff requested, through counsel, copies of the grievances submitted to the ISB, which the ISB provided. *Id.* ¶ 36.

5. In July 2023, the ISB Board of Commissioners found probable cause to proceed with formal charges under IRPC 8.2(a). *Id.* Ex. 3.

6. On August 9, 2023, before the ISB was able to inform Plaintiff of the Board's decision or to lodge formal charges, the ISB received from Plaintiff's attorney a request for compromise after the South Carolina law firm notified Plaintiff on August 7, 2023, that it would not "progress further with your application" due to the pending ISB complaint, but that "once your bar complaint is favorably resolved I would encourage you to reach back out." *Id.* ¶¶ 43–44, 47; Ex. 3.

7. The same day, the ISB (through Defendant Lambert) responded to Plaintiff's attorney's request. *Id.* ¶ 45; Ex. 3. Given that Plaintiff planned to remain out of state, the ISB proposed an objectively reasonable resolution to the grievances—a resignation of Plaintiff's license under Rule 305(3)(1) of the Idaho Bar Commission Rules (IBCR), which is frequently used by attorneys who relocate permanently to other states, as the

[1] IRPC 8.2(a) provides, in relevant part: "A lawyer shall not make a statement that the lawyer knows to be false or with reckless disregard as to its truth or falsity concerning the qualifications or integrity of a judge."

ISB understood that Plaintiff had done.[2] This resolution had significant advantages: it (a) avoided the filing of a formal charge complaint that would be a matter of public record; (b) allowed closing the investigation "without further action or any further response required from Mr. Morris" (i.e., Plaintiff was not required to acknowledge any wrongdoing or even to comment on the grievances); and (c) allowed Plaintiff to "report to the South Carolina Bar (and any other jurisdiction) that he has no discipline and no pending disciplinary matters." Ex. 3. Unfortunately, Plaintiff declined the proposal. *Id.* ¶ 46.

That is the extent of the ISB's activity and its contacts with Plaintiff alleged in the Amended Complaint.[3]

The ISB Defendants have kept the disciplinary process confidential throughout, as is their responsibility under IBCR 521(b). They have not taken any action in the investigation beyond the above-described steps since the August 2023 proposal,[4] after which Plaintiff filed his Notice of

[2] IBCR 305(e)(1) ("Resignation") provides: "An attorney who does not intend to meet licensing requirements may voluntarily resign his or her membership in the Bar by submitting a written request to the Executive Director on a form provided by the Bar. An attorney with pending disciplinary matters may not voluntarily resign without Bar Counsel approval."

[3] Plaintiff's Amended Complaint does contain other *accusations* against the ISB Defendants, but they are all conclusory, non-specific, and non-factual. *See, e.g.*, stating, without any supporting factual allegations, that: "[t]he non-disclosed conflict of interest should have set off alarm bells at ISB, unless ISB was part of the scheme," Dkt. 31 ¶ 37; ISB "conspired [with unspecified co-conspirators] to abuse its powers [in unspecified ways] by eliminating [Plaintiff's] ability to practice law" in Idaho [belied by the ISB's August 9, 2023 letter (Ex. 3)], *id.* ¶ 50; and unidentified Idaho attorneys relayed unspecific "horror stories they experienced at the hands of" ISB and descriptions of a "penchant . . . of the ISB . . . to weaponize ethics rules to target [unidentified] attorneys [in unspecified situations] who engaged in [unspecified] First Amendment protected activities." *Id.* ¶ 53.

[4] The only exception to the non-activity since August 2023 was an ISB letter to the South Carolina State Bar on September 22, 2023, which Plaintiff requested and approved through counsel.

Tort Claim on January 5, 2024 (Dkt. 31 ¶ 52; Ex. 4) and the Ninth Circuit issued its decision ordering a retrial of the underlying lawsuit with the homeowner's association.

Plaintiff's Amended Complaint removed his requests for injunctive relief and declaratory relief. *Id.* at 31–32 ¶¶ A–F.[5] He now seeks only monetary damages. *Id.*

### SUMMARY OF ARGUMENT

Plaintiff's Amended Complaint fails to allege anything that constitutes wrongdoing by the ISB Defendants. They received grievances, they investigated confidentially and in compliance with their duty, they offered an objectively reasonable settlement that would have avoided all the harm Plaintiff alleges, and, to this day, they have never taken any adverse action against Plaintiff—they have not filed formal charges or sought any sanction (of which there are many that would not interfere with Plaintiff's license).

Plaintiff's federal civil rights claims (Count I) should be dismissed for multiple reasons. The ISB is immune under the Eleventh Amendment and is not a "person" under § 1983. The same is true of the individual ISB Defendants in their official capacities. In their individual capacities, the individual ISB Defendants also possess quasi-judicial immunity and qualified immunity against Plaintiff's § 1983 claims.

[5] Previously, Plaintiff's Complaint requested "[t]hat this Court issue a Preliminary Injunction enjoining the Defendant . . . from acting in any manner so as to deprive Plaintiff of his license to practice law in Idaho on the basis of Plaintiffs' free speech in the statements about Judge Winmill." Dkt. 1 at 28 ¶ B. He also requested "Declaratory Relief by affirming *Standing Comm. on Discipline v. Yagman*, 55 F.3d 1430 (9th Cir. 1995) and declare that an attorney's freedom of speech is sacrosanct even when criticizing the judiciary—whether by exposing misconduct or by stating a religiously grounded opinion for why that misconduct may have occurred, and that Plaintiff's statements about Judge Winmill are protected by the First Amendment." Dkt. 1 at 28 ¶ A.

Plaintiff's state law tort claims (Counts II and III) should be dismissed under the Eleventh Amendment and under the Idaho Bar Commission's immunity rule for attorney discipline proceedings.

Plaintiff's racketeering claims (Count IV) should be dismissed under the Eleventh Amendment, under the Idaho Bar Commission's immunity rule for attorney discipline proceedings, and for failure to state a claim.

Thus, the entire Amended Complaint should be dismissed with prejudice under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## LEGAL STANDARD

The Court examines a jurisdictional challenge under Fed. R. Civ. P. 12(b)(1) "as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citations omitted).

Under Rule 12(b)(6), the Court examines the complaint to determine whether the complaint states factual allegations that are "enough to raise a right to relief above the speculative level," taking those allegations as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A "formulaic recitation of the elements of a cause of action will not do," nor is it enough to plead "a legal conclusion couched as a factual allegation." *Id.* (citations omitted). A court may dismiss a claim under Rule 12(b)(6) "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886 (9th Cir. 2018) (citation omitted).

## ARGUMENT

### I. Plaintiff's federal civil rights claims should be dismissed (Count I).

The ISB Defendants are protected by Eleventh Amendment immunity and are not "persons" under § 1983. The individual ISB Defendants in their individual capacities are protected by quasi-judicial immunity, and qualified immunity.

#### A. Plaintiff's claims against the ISB and against ISB officials in their official capacity are barred by Eleventh Amendment immunity.

The Eleventh Amendment bars suits, including § 1983 suits, against state governments in federal courts. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974). This same immunity applies to a state official sued in his official capacity. *Id*. at 663. "The Eleventh Amendment bars [a suit for damages against a State] unless Congress has abrogated state sovereign immunity under its power to enforce the Fourteenth Amendment or a state has waived it." *Holley v. Cal. Dep't of Corr.*, 599 F.3d 1108, 1111 (9th Cir. 2010). Idaho has not waived sovereign immunity. *See, e.g.*, *Joseph v. Boise State Univ.*, 998 F. Supp. 2d 928, 948–49 (D. Idaho 2014); *Mazur v. Hymas*, 678 F. Supp. 1473, 1475 (D. Idaho 1988).

The ISB is a self-governing agency established by statute. *See* Idaho Code § 3-402. The ISB, in part, exercises "delegated authority" from the Idaho Supreme Court and "acts in an administrative capacity as an arm of the Supreme Court in carrying out its supervisory function." *Idaho State Bar v. Doe (2023-32)*, 174 Idaho 1, 18, 551 P.3d 1, 18 (Idaho 2024) (per curiam) (cleaned up). The individual ISB Defendants are a former bar commissioner and two ISB employees, whose only complained-of actions were taken as the ISB's agents. Dkt. 31 ¶¶ 13–15.

Plaintiff's federal civil rights claims for money damages against the ISB Defendants are therefore barred by the Eleventh Amendment.

**B. Plaintiff's claims against the ISB and against ISB officials in their official capacity are barred because the ISB Defendants are not "persons" under § 1983.**

Plaintiff brings his suit under § 1983. Such suits can only be brought against "persons," but "states or government[] entities that are considered 'arms of the State' for Eleventh Amendment purposes are not 'persons' under § 1983." *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022). Further, "state officials 'acting in their official capacities' are outside the class of 'persons' subject to liability under . . . § 1983." *Hafer v. Melo*, 502 U.S. 21, 22–23 (1991) (quoting *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989)); *see also Cornel*, 37 F.4th at 531–32. This is because state officers who are sued for damages in their official capacity "assume the identity of the government that employs them." *Hafer*, 502 U.S. at 27; *see also Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) ("*Will* clarified that a suit against a state official in his official capacity is no different from a suit against the State itself.").

Thus, the ISB Defendants are not "persons" under § 1983. The ISB is a self-governing state agency. *See* Idaho Code § 3-402. As a state entity and an arm of the state, it is not a "person" under § 1983. The individual ISB Defendants are current and former state officials—Bar Counsel, Assistant Bar Counsel, and a former Bar Commissioner. *See* Dkt. 31 ¶¶ 28, 45. They too are not "persons" under § 1983 because they are state officials sued in their official capacities. Thus, Plaintiff's § 1983 claim against the ISB and the individual ISB Defendants sued in their official capacities should be dismissed.

**C. Plaintiff's individual capacity claims are barred by quasi-judicial immunity.**

Judicial immunity is not limited to judges but can apply to state bar personnel in disciplinary proceedings. "Administrative law judges and agency prosecuting attorneys are entitled to quasi-judicial immunity so long as they perform functions similar to judges and prosecutors in a setting like that of a court." *Hirsh v. Justices of Sup. Ct. of State of Cal.*, 67 F.3d

708, 715 (9th Cir. 1995). (*Hirsh* held that bar court judges and prosecutors have judicial immunity because "hearings are adversarial, errors are correctable on appeal, the judges make factual findings and perform other [adversarial] functions, and Bar Court decisions are controversial enough to stimulate harassing damage actions against the adjudicators.") *Id*. "Absolute immunity also protects those functions in which the prosecutor acts as an 'advocate for the State,' even if they 'involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom.'" *Lacey v. Maricopa County*, 693 F.3d 896, 912 (9th Cir. 2012) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "These actions need not relate to a particular trial and may even be administrative in nature, yet are connected to the trial process and 'necessarily require legal knowledge and the exercise of related discretion.'" *Id*. (quoting *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009)).

In *Wu v. State Bar of California*, 953 F. Supp. 315 (C.D. Cal. 1997), the plaintiff challenged "the decisions of [bar staff members] to prosecute his cases, to settle his first case, and not to prosecute other attorneys." *Id.* at 320. The court determined that bar staff members "should enjoy absolute immunity from monetary liability for their performance of these essential prosecutorial functions." *Id*. (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976) (holding that initiation of prosecution is an essential function for which common law provides immunity from civil damages)). This Court should similarly conclude that absolute immunity applies to the individual ISB Defendants.

Defendants Joseph Pirtle and Caralee Lambert are the ISB's Bar Counsel and then-Assistant Bar Counsel. Dkt. 31 ¶¶ 28, 45. As in *Wu*, Plaintiff alleges that Idaho's Bar Counsel should not have investigated him or moved forward with any steps toward charging or prosecuting him. *See, e.g.*, *Id.* ¶¶ 28, 44. But Pirtle and Lambert's actions all fall within quasi-judicial immunity

because their actions were "essential prosecutorial functions" *Wu*, 953 F. Supp. at 320—i.e., actions "preliminary to the initiation of a prosecution[,] . . . apart from the courtroom[,]" "connected to the trial process and 'necessarily requir[ing] legal knowledge and the exercise of related discretion." *Lacey*, 693 F.3d at 912.

Defendant Jillian Caires's quasi-judicial immunity is straight-forward given her role as a Bar Commissioner. Moreover, Plaintiff does not allege that she took any specific actions towards Plaintiff, only that she was an agent of the Idaho State bar through 2024 and worked at a law firm that defended a party in the federal court case against the HOA. Dkt. 31 ¶¶ 14, 64. All of Caires's actions as a Bar Commissioner would necessarily have been adjudicatory in nature and, as such, subject to quasi-judicial immunity.

Accordingly, the individual ISB Defendants are immune from suit in their individual capacities.

**D. Plaintiff's individual capacity claims are barred by qualified immunity.**

Qualified immunity "shields federal and state officials from [monetary] damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). "To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (cleaned up). "When properly applied," this standard "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *al-Kidd*, 563 U.S. at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Maples v. Pinal County*, 453 F. Supp. 3d 1314, 1319 (D. Ariz. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).

Accordingly, the qualified immunity defense should be resolved "at the earliest possible stage in litigation." *Id*. (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

No controlling case law made the individual ISB Defendants aware that they would violate clearly established law by investigating, in response to grievances, whether Plaintiff's comments about Judge Winmill crossed the line in violation of IRPC 8.2. On the contrary, the Ninth Circuit has recognized the compelling state interests a bar association has in regulating attorneys' behavior, including specifically in enforcing rules substantially identical to Rule 8.2.

In *Sandlin*, the Ninth Circuit affirmed the suspension of an attorney for violating Washington's Rule 8.2 despite a First Amendment challenge, stating that "once a lawyer is admitted to the bar, although he does not surrender his freedom of expression, he must temper his criticisms in accordance with professional standards of conduct." *U.S. Dist. Ct. for E. Dist. of Washington v. Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993).

The Ninth Circuit later reiterated that First Amendment protections are not absolute for attorneys' statements about judges: "*Sandlin* held that an objective malice standard strikes a constitutionally permissible balance between an attorney's right to criticize the judiciary and the public's interest in preserving confidence in the judicial system." *Yagman*, 55 F.3d at 1436 (applying a court's local rule prohibiting conduct that "degrades or impugns the integrity of the Court" or "interferes with the administration of justice"). The court held that an attorney's statement that a judge was "drunk on the bench" was not protected by the First Amendment. *Id*. at 1440–41.

Likewise, the Idaho Supreme Court has upheld Rule 8.2(a), affirming a public reprimand for an attorney's violation of the Rule in his statements about a judge. *Idaho State Bar v. Topp*, 129 Idaho 414, 417, 925 P.2d 1113, 1116 (1996).

In short, the validity of Rule 8.2(a) is well-established. Attorneys repeatedly have been investigated before about their adherence to or departure from Rule 8.2 and equivalents. No court has held that such rules are facially unconstitutional, let alone that mere investigations pursuant to such rules violate rights that are sufficiently clear that every reasonable official would have understood that simply opening an investigation based on a grievance—where the questioned statements were in fact made—violates a clearly established right. No controlling case put the individual ISB Defendants on notice that Plaintiff's specific statements—that Judge Winmill was an "anti-Christian bigot" or tried to "rig the jury"–could not be the subject of an investigation for reckless disregard of truth or falsity.

Accordingly, the individual ISB Defendants are entitled to qualified immunity from damages claims in their individual capacities.

## II. Plaintiff's ITCA claims should be dismissed (Counts II-III).

Count II is described as a violation of the Idaho Tort Claims Act, which is not a standalone cause of action but, as Plaintiff states, "outlines specific requirements for pursuing claims against governmental entities in Idaho." Dkt. 31 ¶ 80; *see* Idaho Code §§ 6-901–905. Whatever tort Plaintiff may have wanted to bring would be a state law claim if it is subject to the ITCA. Count III is a claim for malicious prosecution, a state law claim under Idaho Code § 19-3924. The ISB Defendants are immune from these claims under the Eleventh Amendment and IBCR 520(b).

### A. Plaintiff's ITCA claims are barred by Eleventh Amendment immunity.

"Just as sovereign immunity precludes a federal court from pursuing federal claims against the state or state actors in their official capacity, it likewise precludes a federal court from adjudicating state law claims against them since 'it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.'" *Joseph*, 998 F. Supp. 2d at 948–49 (quoting *Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 106 (1984)). "[A] state's consent to suit in its own courts is not a waiver of its immunity from suit in federal court." *Sossamon v. Texas*, 563 U.S. 277, 285 (2011) (citation omitted). This immunity extends to "state departments, agencies, boards, and commissions, and to state employees acting in their official capacity because a suit against them is regarded as a suit against the State itself." *Planned Parenthood Ariz., Inc. v. Brnovich*, 172 F. Supp. 3d 1075, 1086 (D. Ariz. 2016) (quoting *Will*, 491 U.S. at 71). "Suing employees in their official capacities is redundant where the entity is sued as well." *Joseph*, 998 F. Supp. 2d at 948 (citing *Henry v. Universal Tech. Inst.*, No. CV 11–01773–PHX–FJM, 2012 WL 1623162, at *4 (D. Ariz. May 9, 2012)). Idaho has not consented to be sued in federal court, as this Court has recognized. *See, e.g.*, *Joseph*, 998 F. Supp. 2d at 948–49; *Mazur*, 678 F. Supp. at 1475.

Because Idaho has not consented to suit in federal court for state law claims, Claims II and III are barred by Eleventh Amendment Immunity, and should be dismissed.

**B. Plaintiff's ITCA claims are also barred by IBCR 520(b) immunity.**

Further, Counts II and III, which relate to the Bar's exercise of its regulatory authority, are barred by the disciplinary authority immunity extended by IBCR 520(b), which has been adopted by the Idaho Supreme Court: "Members of the Professional Conduct Board, members of the Hearing Committees, Bar Counsel, members of the Board of Commissioners, and members of their respective staffs shall be immune from civil suit and damages for any conduct or occurrence in the course of or arising out of performance of any official duties in connection with these Rules." The actions of the ISB Defendants alleged in the Amended Complaint fall squarely within this Rule.

Therefore, Counts II and III should be dismissed because of Eleventh Amendment immunity and IBCR 520(b) immunity.

**III. Plaintiff's racketeering claims should be dismissed (Count IV).**

Eleventh Amendment and IBCR immunity also apply to Plaintiff's federal and state law racketeering claims. In addition, Plaintiff fails to state a racketeering claim.

**A. Plaintiff's racketeering claims are barred by Eleventh Amendment and IBRC immunity.**

The ISB Defendants are immune from federal RICO claims under the Eleventh Amendment. The federal RICO statute "neither mentions nor waives sovereign immunity." *Cannon v. Univ. of Nev. Sch. of Med.*, No. 2:09-cv-00987-JCM-PAL, 2009 WL 10708964, at *1 (D. Nev. Oct. 19, 2009). "RICO does not abrogate a state's sovereign immunity." *Bonning v. Idaho State Police Dep't*, No. 1:25-cv-00002-AKB, 2025 WL 1029848, at *5 (D. Idaho Apr. 7, 2025); *see also Bair v. Krug*, 853 F.2d 672, 674–75 (9th Cir. 1988).

The ISB Defendants are also immune from Plaintiff's state law racketeering claim under the Eleventh Amendment. *See Joseph*, 998 F. Supp. 2d at 948–49. In addition, IBRC 520(b) provides immunity from Plaintiff's state law racketeering claims, just as it does for Plaintiff's ITCA claims. *See* Section II.B. above.

Therefore, Plaintiff's racketeering claims should be dismissed.

**B. Plaintiff fails to state a federal or state RICO claim.**

Even if there were no applicable immunity, Plaintiff's Amended Complaint fails to state a RICO claim. "To state a claim under RICO Plaintiff must demonstrate: (1) the conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity." *Ricotta v. State of California*, 4 F. Supp. 2d 961, 977 (1998) (quoting *Sun Sav. and Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191 (9th Cir. 1987)). "[P]ersonal injuries are not compensable under RICO." *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785–86 (9th Cir. 1992) ("RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff.")

At bottom, a civil RICO claim must allege underlying *criminal* conduct. *Dees v. Cal. State Univ., Hayward*, 33 F. Supp. 2d 1190, 1202 (N.D. Cal. 1998) ("'Racketeering activity' includes any act '*indictable*' under certain enumerated federal criminal statutes"; "*criminal* conduct forms a pattern if it embraces *criminal* acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events") (emphasis added); *see also* 18 U.S.C. § 1961(1) (definition of racketeering activity).

Plaintiff nowhere has alleged any criminal conduct by the ISB Defendants (or any others in any undefined "enterprise"). Further, "government[] entities are not subject to suit under RICO because they are 'incapable of forming a malicious intent[.]'" *Bonning*, 2025 WL 1029848, at *5 (quoting *Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir. 1991)).

Plaintiff therefore fails to state a federal or state racketeering claim, which should result in dismissal.

## CONCLUSION

For the foregoing reasons, this Court should grant the ISB Defendants' Motion to Dismiss, with prejudice. Dismissal with prejudice is appropriate where Plaintiff has already been permitted to amend his original Complaint and further amendment would be futile.

DATED: November 10, 2025.

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

/s/ *David J. Myers*
DAVID J. MYERS
Deputy Attorney General

STATE OF IDAHO
OFFICE OF THE ATTORNEY GENERAL

/s/ *Kyle D. Grigsby*
KYLE D. GRIGSBY
Deputy Attorney General

*Attorney for Defendants Idaho State Bar, Jillian Caires, Caralee Lambert, and Joseph Pirtle*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic Filing to the following persons:

Jeremy R. Morris
Idaho Bar No. 8500
P. O. Box 891
Hardy, Virginia 24101
P: (208)964-5878
E: jrmorris81@icloud.com

*Pro se Plaintiff*

/s/
Kyle D. Grigsby
Deputy Attorney General