Jeremy R. Morris
Idaho Bar No. 8500
PO Box 891
Hardy, Virginia 24101
Tel: (208) 964-5878
jrmorris81@icloud.com

*pro se* Plaintiff

## U.S. DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| Jeremy Ray Morris,<br><br>          Plaintiff,<br><br>v.<br><br>Idaho State Bar, Jillian Caires, Caralee Lambert, Joesph Pirtle, Joel Hazel, Molly O'Leary, and John Does 1-100.<br><br>          Defendants. | Civil No. 1:25-cv-00446-AKB<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT IDAHO STATE BAR, JILLIAN CAIRES, CARALEE LAMBERT, AND JOSEPH PIRTLE'S MOTION TO DISMISS AMENDED COMPLAINT** |

## PRELIMINARY STATEMENT

Plaintiff served his Amended Verified Complaint on Defendants:  Idaho State Bar, Jillian Caires, Caralee Lambert, Jospeh Pirtle, Joel Hazel, and Molly O'Leary ("Defendants") October 25, 2025.  Defendants are split into three separate groups and therefore represented by three separate counsels with three different responsive pleadings:

**Group 1:**  Idaho State Bar (hereafter "ISB") and its officers or agents: Jillian Caires, Caralee Lambert, and Joseph Pirtle; jointly and severally in their individual capacity.

**Group 2:**  Joel Hazel, bar complaintant in his individual capacity.

**Group 3:**  Molly O'Leary, bar complainant in her individual capacity.

All three groups of Defendants have filed Motions to Dismiss.  Plaintiff Jeremy Morris respectfully submits this response specifically to address the *Memorandum in Support of Motion to Dismiss Amended Complaint* filed by Defendant Idaho State Bar, Jillian Caires, Caralee Lambert, and Joseph Pirtle (Group 1), pursuant to Federal Rule of Civil Procedure 12(b)(1), failure to state a claim pursuant to F.R.C.P. 12(b)(6), and Idaho Rules of Civil Procedure 12(b)(1).  Plaintiff intends to file additional subsequent Responses (subsequent to the one herein), to address the claims made by Defendants in Group 2 and Group 3.

Due to the fact that there are 3 separate Defendant groups requiring separate responses to their respective Motions to Dismiss, for the sake of clarity, ___*this*___ Response herein will refer to Group 1 Defendants (Idaho State Bar, Jillian Caires, Caralee Lambert, and Joseph Pirtle), whether in their individual or official capacity or both, collectively hereinafter as Defendant(s) or ISB or ISB by and through its agents, or in the cases of individual capacity—ignoring "ISB" altogether—and referring to them as "individual Defendants."

After consideration of existing caselaw, Plaintiff will file ITCA claim in state court and have that case run concurrent with the present action.

Defendants do not make an argument against Plaintiff's Equal Protection or Plaintiff's extremely important Viewpoint Discrimination claims so Plaintiff will not discuss those claim in this Response, but this Court can apply sovereign immunity and qualified immunity / judicial immunity responses to those claims not addressed by the Attorney General's office in their Motion to Dismiss.

## INTRODUCTION

The phrase "extraordinary claims require extraordinary evidence" was popularized by astronomer **Carl Sagan**. While Sagan is most famously associated with the quote, it is a rephrasing of a principle first articulated by philosopher and mathematician Pierre-Simon Laplace, who stated that "the weight of evidence for an extraordinary claim must be proportioned to its strangeness." The plaintiff in this case, an attorney, is well aware that his claims are shocking to the extreme. They involve the hallowed bodies of this, our democratic Republic and its legal institutions. But like any institution—even hallowed ones—they can become corrupted and bear bad fruit. The Plaintiff accepts that he has a tall order to produce "extraordinary evidence" of a collusive body who targeted the Plaintiff for his political and religious beliefs. The Plaintiff may not be proving the existence of extraterrestrial life—the kind of extraordinary evidence sought by Carl Sagan—but the principle is nonetheless the same. Shining a light on the corrosive elements within (and without) the Idaho State Bar and its current and former agents will take time and records that only ISB has in its possession through a process of Discovery. But this is a Response to a Motion to Dismiss. And the legal standard is that the factual allegations in the Plaintiff's well-pleaded complaint are true. The Court must draw all reasonable inferences in favor of the non-moving party.

The Idaho Attorney General's office is defending ISB and its current and former agents—apparently in both their official and individual capacities. The approach the Idaho Attorney General has apparently taken to defend ISB and its agents is two-fold:

1.   Claim everything ISB and its agents has ever done, in whatever capacity, at any time or place is immune from any harm inflicted upon any person. In short, assert that ISB as an institution and those who work there are untouchable. This Response seeks to cast doubt on

the level of immunity claimed by ISB and stands for the proposition that no person in a state

agency, a quasi-state agency, a private entity governed by ABA, or whatever ISB claims

itself to be, should be outside the law.

2.  Make illogical assertions that hopefully (from the Defendants' perspective), this Court will

accept at face-value.  In the opening salvo by the Idaho AG's office, they claim, the

following: "The ISB opened an investigation as a matter of course that remains pending. *Id.* ¶

26; Exs. 1, 7–8. The ISB has not yet elevated the matter to any formal charges and has kept

its proceedings confidential, as is its duty. *Id.* ¶¶ 45–46; Exs. 3, 5."  No serious person

believes this.  This kind of fantasyland statement should be understood for what it is:

FALSE.  A full **two years** after the Idaho State Bar informed Mr. Morris that they had

DECIDED (past tense "decid**ed**") to seek a FORMAL charge against Mr. Morris, ISB is still

considering filing these charges?  Everyone knows this is not true.  But ISB has to say this

because they know that their defense falls apart if they fail to make that assertion.  This kind

of bad-faith argument is an abuse of the judicial process calculated to invent unsubstantiated

claims for the sole purpose of checking boxes that the defense knows must be checked.

## I.    CIVIL RIGHTS CLAIMS

Plaintiff Morris filed a §1983 action against state officials (collectively, "ISB" or "ISB

and its agents acting under color of state law").  In their Motion to Dismiss, Defendants expend

much energy discussing whether or not the Idaho State Bar is an arm of the state.  Defendants

then occupy several pages explaining why the Eleventh Amendment prevents Plaintiffs from

suing state agencies in federal court for damages.  **But the Plaintiff is not making that claim.**

Rather, Mr. Morris is suing the officers or agents of the Idaho State Bar in their individual

capacity as they acted under color of state law.  While it is true that initially Plaintiff had

language that <u>also</u> directed some conclusory arguments at the Idaho State Bar itself and officers in their official capacity, that language was likely included because initially, the Plaintiff was asking the court in his original complaint for injunctive relief which would be appropriate to name officers in their official capacity. Plaintiff's amended complaint repeatedly makes it clear that the lawsuit seeks to hold officials accountable in their individual capacity acting beyond the scope of their duties. §1983 literally exists to hold state officials accountable in their individual capacity and Defendants cannot wiggle out of that reality.

The only other open question then would be whether Defendants have judicial immunity or qualified immunity. But this Court decided that very question in *Witzke v. Idaho State Bar* in May of 2023 with nearly all the same individual Defendants in the caption. In that case, the Court made it clear that the Idaho State Bar was not going to avoid liability under the guise of qualified immunity or judicial immunity. *Witzke v. Idaho State Bar*, No. 1:22-cv-00478-REP (D. Idaho 2023), reported at 672 F. Supp. 3d 1058 (D. Idaho 2023).

## 1.   §1983 Applies to ISB Officials in Their INDIVIDUAL Capacity.

The Eleventh Amendment does NOT protect officials sued in their ***individual capacity*** for personal liability, if: 1) They acted under color of state law, and 2) Their conduct violated clearly established constitutional rights. This comes from a long line of cases including *Hafer v. Melo*, 502 U.S. 21 (1991) which made clear that officials can be sued personally under §1983. The US Supreme Court further clarified this in *Scheuer v. Rhodes*. There, the Supreme Court held that the Eleventh Amendment does not categorically bar suits for damages against state officials who violate federal rights under color of state law, particularly when seeking personal liability. The Court established that executive immunity is not absolute but is qualified, depending on the official's discretion and the circumstances, rejecting the notion that high-level

state officials are automatically immune. The case did not abrogate the Eleventh Amendment but rather clarified its application to individual liability claims against state officials. *Scheuer v. Rhodes*, 416 U.S. 232 (1974) and *Alden v. Maine* confirmed the distinction between official vs. personal capacity.

Morris has multiple claims that get over the finish line (multiple claims—each with exceptions to sovereign immunity), as it were:

a.  Conspiracy against First Amendment under §1983.

b.  Violation of his religious freedom via the Equal Protection clause under §1983.

c.  Violation of Mr. Morris' right to petition the government under §1983.

d.  And perhaps most ominously for Defendants, malicious prosecution under §1983 which apparently has practically no cap on actual damages.

**2.  Individual Capacity Claims are Not Barred by Quasi-Judicial Immunity.**

Under §1983**,** individuals can sue state officials personally (in their individual capacity) for violating constitutional rights. This means that the official is held personally liable, and any damages awarded would come from their personal assets, not the state or government agency they work for.  Individual Capacity Claims are Not Barred by Quasi-Judicial Immunity.  Quasi-judicial immunity is a form of absolute immunity that applies to officials who perform functions closely associated with the judicial process.  Courts often extend this immunity to state bar officials when they carry out disciplinary, regulatory, or adjudicatory duties that mirror those of judges or prosecutors.  Courts generally hold that quasi-judicial immunity protects officials performing adjudicatory or prosecutorial functions, but it **does not extend to actions that are retaliatory or made in bad faith**.

The entire point of Plaintiff Morris' lawsuit is that Idaho State Bar officials acted in bad faith—quite literally targeting him because Morris filed misconduct allegations against a federal judge; and the President of the same state bar was ON THE CASE and never disclosed this, recused herself—and although not dispositive to Morris' case, possibly instigated the investigation in the first place.  In Defendants' Memorandum in Support of Motion to Dismiss Amended Complaint, page 10., Defendants' counsel writes:

> "Jillian Caires's quasi-judicial immunity is straight-forward given her role as a Bar Commissioner.  Moreover, Plaintiff does not allege that she took any specific actions toward Plaintiff, only that she was an agent of the Idaho State bar through 2024 and worked at a law firm that defended a party in the federal court case against the HOA."

Would Defendants' counsel feel confident in posting such a message in an online forum?  In the monthly Idaho State Bar newsletter?  In essence, ISB's counsel claims there is no issue if the bar commissioner acts as a lawyer for a Defendant SUING MR. MORRIS for millions and then oversees a campaign against Mr. Morris' ability to speak about the judge when Morris reported the judge in that case for jury rigging?!  The Attorney General's office apparently believed that writing this ludicrous statement in a legal motion was not problematic.

There are numerous cases that support Plaintiff's position.  The United States Supreme Court weighed in on this question in *Hafer v. Melo*.  Speaking for the majority, Sandra Day O'Connor explained that individual-capacity suits allowed against state officials. *Hafer v. Melo*, 502 U.S. 21, 112 S. Ct. 358, 116 L. Ed. 2d 301 (1991).  The *Harris v. Harvey* case is often cited for the proposition that judicial immunity does not protect judges engaging in non-judicial, malicious, or retaliatory acts.  In that case, the Court held that a judge had no judicial immunity for "intentional acts of public defamation inspired by racial prejudice" because such acts "were not acts normally performed by a judge" and occurred outside the courtroom context. *Harris v. Harvey*, 605 F.2d 330 (7th Cir. 1979).  It should be noted that this Court and the 9th

Circuit has stated that State Bars have judicial functions and are considered judicial officers and therefore subject to *Harris*.

The key principle in denying quasi-judicial immunity for retaliatory acts is that quasi-judicial immunity does not extend to actions that are *outside the scope* of an official's adjudicatory function (e.g., retaliatory acts).  Moreover, retaliatory actions that violate constitutional rights are **not** shielded by immunity, as this would undermine the protections against retaliation.

The case of *Imbler* is helpful in this regard.  It established that prosecutors have absolute immunity for acts that are *intimately associated with the judicial process* (such as initiating prosecutions or presenting evidence). However, it also suggested that immunity does not apply to prosecutorial actions outside that context, particularly retaliatory or vindictive actions.  Although this case dealt with prosecutors, the principles extend to bar officials performing quasi-judicial roles. *Imbler v. Pachtman*, 424 U.S. 409 (1976).  [officials] are protected by absolute immunity for actions closely related to the judicial process, but not for actions taken in bad faith or for retaliatory purposes. *Burns v. Reed*, 500 U.S. 478 (1991).

For purposes of the present case, however, a direct correlation to attorneys is informative. The Ninth Circuit gave us just such a case in *Harvey v. Waldron.*  That case involved attorney disciplinary proceedings where a bar official was alleged to have retaliated against an attorney for engaging in protected speech.  The Ninth Circuit **denied** quasi-judicial immunity to the bar officials who were accused of retaliatory actions outside the scope of their adjudicatory duties. The court emphasized that actions motivated by **retaliation for constitutional rights** (e.g., free speech or due process violations) are not shielded by quasi-judicial immunity.

*Harvey* demonstrates that retaliatory actions in disciplinary matters are considered to fall outside the protection of judicial immunity.  *Harvey v. Waldron*, 210 F.3d 1008 (9th Cir. 2000).  This Circuit is not the only one that has determined state bars to lack quasi-judicial immunity.  In *Cohen v. Longshore*, the Eleventh Circuit denied quasi-judicial immunity to a bar disciplinary official who was alleged to have taken retaliatory actions against an attorney for asserting a legal claim.  The Court clarified that retaliation against an individual for exercising constitutional rights is not a judicial function, even if the actions occurred within the context of bar disciplinary proceedings.  *Cohen v. Longshore*, 621 F.3d 1321 (11th Cir. 2010).

This Court answered this quasi-judicial question in Witzke when Joeseph Pirtle (the same Joseph Pirtle in the instant action now before this Court) was accused by another individual of fabricating criminal conduct against him.

> Whether quasi-judicial immunity applies hinges on "the specific function performed, and not the role or title of the official" who performs it. See Scannell v. Wash. St. Bar Ass'n, Case No. CV 12-00683 SJO, 2013 WL 12423276 at *3 (W.D. Wash. July 1, 2013) (quoting Miller v. Gammie, 335 F.3d 889, 897 (9th Cir. 2003)). Generally speaking, state bar officials are immune from monetary damages "so long as they perform functions similar to judges and prosecutors in a setting like that of a court." Hirsh v. Justices of the Supreme Ct., 67 F.3d 708, 715 (9th Cir. 1995). However, this immunity does not extend to investigative activities. Delacruz v. State Bar of Cal., Case No. 16-cv-06858-BLF (SVK), 2017 WL 7310715, at *3 (N.D. Cal. June 21, 2017) (citing Khanna v. State Bar of Cal., 505 F. Supp. 2d 633, 647 (N.D. Cal. 2007)). Defendants Pirtle and Bjorkman are not entitled to quasi-judicial immunity for the conduct alleged in the Verified Complaint. Plaintiff claims that those Defendants were acting outside the scope of their employment with the ISB when they allegedly fabricated a judicial ethics complaint against him. V. Compl. ¶ 175 (Dkt. 1). Put differently, Plaintiff claims that those Defendants "conduct[ed] a 'sham' investigation" into Plaintiff that led to him being placed on leave.12 Id. ¶ 176. **Taking these allegations as true, the conduct Plaintiff alleges falls outside the scope of any quasi-judicial immunity asserted by the State Defendants.**

In sum, retaliatory acts by bar officials are not protected by quasi-judicial immunity.  Courts recognize that retaliating against individuals for exercising constitutional rights like free

speech, or engaging in legal challenges undermines the integrity of the judicial process and civil

rights protections.  The "function test" for quasi-judicial immunity limits its application to

actions closely tied to the *adjudicatory or prosecutorial* function, not to actions motivated

by personal animus or retaliation**.**

### 3.  Individual Capacity Claims are Not Barred by Qualified Immunity.

In *Witzke*, this Idaho Federal District Court determined that the Idaho State Bar was not

entitled to qualified immunity because the burden was on ISB to show they were entitled to it.

The doctrine of qualified immunity protects government officials from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

To be clearly established, a right must be "sufficiently clear that every reasonable official would

have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11

(2015).  While a clearly established right should not be defined at a high level of generality, it

does not require precedent exactly on point either. Id. at 11-12. Rather, existing precedent must

place "the statutory or constitutional question beyond debate" such that only those government

officials who are either "plainly incompetent or . . . knowingly violate the law" are held liable for

monetary damages. Id. (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) and Mallet v.

Briggs, 475 U.S. 335, 341 (1986)). "Defendants bear the burden to prove they are entitled to

qualified immunity." *Greer v. City of Hayward*, 229 F. Supp. 3d 1091, 1106 (N.D. Cal. 2017)

(citing *Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005)).

In *Witzke*, this Court expressed skepticism that a clearly established right is implicated by

the novel circumstances of that case, but that it is "**ultimately the State Defendants' burden to**

**show an entitlement to qualified immunity**, and their conclusory argument does not carry that

burden at this stage.  Accordingly, the Court finds that Defendants Berry and Wasden are not

shielded by qualified immunity." *Witzke v. Idaho State Bar*, No. 1:22-cv-00478-REP (D. Idaho

2023), reported at 672 F. Supp. 3d 1058 (D. Idaho 2023).  In *Witzke*, all it took for the Court to

deny qualified immunity was Plaintiff Brooks Witzke's statement that he overheard a phone call

about himself.  Under the legal standard of 12(b)1 and 12(b)6, the Court must take all allegations

in the complaint to be true.  Mr. Witzke said that a judge told someone on a phone call that he

was going to have to terminate Mr. Witzke.

> In this case, Morris alleges that Joseph Pirtle did NOT deny that Morris was targeted:
>
> At some point during this phone call, Mr. Morris accused Mr. Pirtle and ISB of targeting Morris because Morris dared to file a complaint against Judge Winmill. Morris also accused ISB of targeting Morris for his conservative Christian viewpoint. Mr. Pirtle did not deny the allegation that Morris was targeted. (Plaintiff's Verified Amended Complaint, Pg. 8, line 14-18).

Plaintiff Morris makes specific allegations of flagrant violations of his civil rights in his

Amended complaint.  But on just this **single** allegation of targeting alone, Defendants cannot

meet the necessary burden when *assumed true* by the 12(b)6 legal standard. FRE 801(d)(2)(B)

allows silence to be treated as an adoptive admission, but *only* when: 1) The party heard and

understood the statement, 2) The party had an opportunity to respond, and 3) A reasonable

person would have denied the statement if it were untrue.  Plaintiff pro se writing this response

attests to the veracity of the claim in the Amended Verified Complaint, Defendant clearly heard

Plaintiff's allegation that Plaintiff was targeted for his conservative religious beliefs.  Plaintiff

further attests that Defendant heard the claim that Plaintiff was targeted for "daring to file a

complaint against Judge Winmill."  Plaintiff refused to admit or deny when confronted with this

accusation.

The United States Supreme Court created a useful reasonableness standard that they deemed "the obviousness exception" in *Hope v. Pelzer*. The high court said "some things are so obviously unlawful" that any reasonable officer would know it violates the Constitution. Government officials are **not entitled to qualified immunity** when their conduct violates "clearly established" constitutional rights in an obvious way, even if no prior case has identical facts. In that case, an Alabama prison guard violated the Eighth Amendment by handcuffing an inmate to a hitching post for hours in the sun without water or bathroom breaks as punishment. The Court rejected the Eleventh Circuit's rigid requirement of factually identical precedent, explaining that officials can be on notice that their conduct is unlawful from general constitutional principles and from prior, related warnings by the Department of Justice. The decision is widely used to argue that "fair warning" of unconstitutionality can arise from obvious cruelty, not just from case-specific precedent.

Defendants incorrectly argue that qualified immunity applies because Defendants could not have known that what they were doing was obviously wrong. In addition to Joseph Pirtle side-stepping multiple allegations of "targeting" and the conflict of interest that put the attorney on the case involving the same judge at the top spot of the state bar investigating Morris, but the very fact that Morris was being investigated for speech associated with petitioning the government was, by itself, evidence of misconduct. According to Defendants:

> "No controlling case law made the individual ISB Defendants aware that they would violate clearly established law by investigating, in response to grievances, whether Plaintiff's comments about Judge Winmill crossed the line in violation of IRPC 8.2. (In short, the validity of Rule 8.2(a) is well-established. Attorneys repeatedly have been investigated before about their adherence to or departure from Rule 8.2 and equivalents. No court has held that such rules are facially unconstitutional, let alone that mere investigations pursuant to such rules violate rights that are sufficiently clear that every reasonable official would have understood that simply opening an investigation based on a grievance—where the questioned statements were in fact made—violates a clearly established right. No controlling case put the individual ISB Defendants on notice that

> Plaintiff's specific statements—that Judge Winmill was an "anti-Christian bigot" or tried to "rig the jury"–could not be the subject of an investigation for reckless disregard of truth or falsity.

The Supreme Court expressly rejected that argument in *Hope v. Pelzer*, 536 U.S. 730 (2002). The Court held that officials are not shielded by qualified immunity when their conduct violates constitutional rights in an obvious and egregious manner, even if no earlier case presented the same factual scenario. *Id.*at 741. As the Court explained, "officials can still be on notice that their conduct violates established law even in ***novel*** factual circumstances," and the critical question is whether the defendants had "fair warning" that the conduct was unlawful. *Id.* at 741–45.  The Defendants had "fair warning" that retaliatory/bad-faith actions violate clearly established law. Under *Hope*, what matters is whether "a reasonable official would understand that what he is doing violates that right." *Id.*at 739.

Courts have repeatedly held that retaliatory, fabricated, or bad-faith actions taken under color of state law violate clearly established First and Fourteenth Amendment rights.  The unlawfulness of such conduct is obvious: state officials cannot fabricate grounds for discipline or prosecution, retaliate against protected speech, or deprive individuals of liberty or property through arbitrary or malicious misuse of authority.  Because these constitutional principles have long been established, *Hope* makes clear that Defendants cannot hide behind the absence of a case with identical facts.  Without any other way to say this nicely, the FBI and Justice Department does not spend the amount of time they have already spent discussing these facts with Plaintiff Morris if the actions by Defendants were not so obviously in bad faith.  The Supreme Court held that courts must look to general principles of constitutional law, not hyper-specific factual analogues. *Hope*, 536 U.S. at 741 ("general statements of the law are not inherently incapable of giving fair and clear warning"). Long-standing constitutional rules

prohibit (1) retaliatory punishment for constitutionally protected conduct, (2) deprivation of rights through knowingly false accusations, and (3) bad-faith or arbitrary exercise of state power. Under *Hope*, those broad principles are sufficient to establish that Defendants had clear notice that their conduct was unconstitutional.  In this case, Idaho State Bar and its agents 1) retaliated against Morrises speech rights, his right to petition the government, and his right to not be targeted with viewpoint discrimination, 2) was deprived of rights through this targeting campaign and had to hire a lawyer to keep his license and expose this targeting scheme and in the process chilled his own speech to avoid additional problems with ISB, 3) observed the ISB attempt to blackmail him by offering not to tell anyone of potential formal charges unless he gives up his license; until the scheme was exposed by national television.

Defendants' counsel cites *Sandlin* to argue that ISB is vested with authority which includes the regulation of speech.  Quoting from Defendants' motion, "In *Sandlin*, the Ninth Circuit affirmed the suspension of an attorney for violating Washington's Rule 8.2 despite a First Amendment challenge, stating that "once a lawyer is admitted to the bar, although he does not surrender his freedom of expression, he must temper his criticisms in accordance with professional standards of conduct." *U.S. Dist. Ct. for E. Dist. of Washington v. Sandlin*, 12 F.3d 861, 866 (9th Cir. 1993).  But Defense counsel is barking up a tree with no squirrel.  Nobody disputes that the Idaho State Bar is granted this power.  Certainly not the Plaintiff who agrees with IRPC 8.2 – essentially a MALICE STANDARD.  Nobody, (certainly not the Plaintiff), has said that freedom of speech includes defamation.  The question is whether ISB sought to regulate opinion speech and did so with the clear intent to target the Plaintiff, who, happened, (shocker emoji) to be the opposing counsel in a case the Director of the ISB was involved with for millions of dollars.

Defendants' counsel seems to be creating paper tigers that do not exist. For example, Plaintiff did not claim that he had right to interrupt a judge in a courtroom. Plaintiff did not claim ISB could not sanction Mr. Morris for speech inside a courtroom. Yet the attorney general's office has spent considerable effort in their Memorandum in Support of their motion making arguments about the role of ISB that no attorney has disputed. The question is simply this: why is the Idaho State Bar being investigated by federal authorities for targeting Mr. Morris if there is not a factual basis for targeting him? Under FRCP 12(b)1 12(b)6, factual assertions are taken as true. Defendant cannot meet the burden required for qualified immunity.

### 4. IDAHO TORT CLAIMS ACT (ITCA)

Upon consideration of the complexities of sovereign immunity as it applies in supplemental jurisdiction to a tort claim (specifically, the Idaho Tort Claims Act), Plaintiff acknowledges that this Court would only allow this claim to proceed if taking a novel approach to this question. Therefore, to save this Court time, Plaintiff will be filing a subsequent motion to sever this claim from the others and file that claim in state court. Such a motion is perhaps unnecessary as the appropriate remedy in Eleventh Amendment supplemental jurisdiction rulings is for the court to dismiss the specific state claim *without prejudice*. This court could act on its own, but Plaintiff will nonetheless file a motion contemporaneous to this Response to Defendant's Motion to Dismiss.

Federal Rule of Civil Procedure 21 authorizes the Court to "sever any claim against any party." Federal Rule of Civil Procedure 42(b) authorizes the Court to order separate proceedings "for convenience, to avoid prejudice, or to expedite and economize."

Severance is appropriate where:

1. The claims raise different jurisdictional considerations,

2.  The claims must be heard in different forums, and

3.  Dismissing the severed claims without prejudice avoids undue prejudice to any party.

Idaho has not unequivocally waived Eleventh Amendment immunity for tort actions brought in federal court. The ITCA expressly requires state tort claims to be brought in Idaho state court, not federal court.  Because supplemental jurisdiction under §1367 cannot override the Eleventh Amendment's jurisdictional bar, the state-law claims cannot proceed in this forum and severance is appropriate. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984).

## 5.  RACKETEERING

### 1.  The Eleventh Amendment and IBRC Immunity Does Not Bar Plaintiff's Racketeering Claims.

In *Bair v. Krug*, the Ninth Circuit held that RICO does not override a State's sovereign immunity—you cannot sue the state itself under RICO in federal court absent a waiver.  *Bair v. Krug*, 853 F.2d 672 (9th Cir. 1988).  But in this case, Plaintiff is not suing the state/arm of state under RICO; only officials individually.

In *Committee to Protect Our Agricultural Water*, the court recognized that state agencies and state officials in their official capacities are generally immune from liability under RICO and §1983.  "State agencies and state officials acting in an official capacity are generally immune for liability under RICO and §1983.  However, the Eleventh Amendment does *not* bar suits against state officials sued in their individual capacity for acts taken during the course of their official duties." *Committee to Protect Our Agricultural Water v. Occidental Oil & Gas Corp.*, No. 1:15-cv-01323-DAD-JLT, Order Granting Motions to Dismiss (E.D. Cal. Jan. 20, 2017).  The Supreme Court held that state officials sued in their individual capacities are "persons" for purposes of § 1983 and that the Eleventh Amendment does not bar personal-capacity suits, even

when the challenged conduct was undertaken in an official role. Useful language (paraphrased): personal-capacity suits seek to impose **individual liability** on a government officer, and the Eleventh Amendment does not bar such suits.

In *Pena v. Gardner*, the Ninth Circuit expressly held that the Eleventh Amendment bars suits in federal court against state officials in their *official* capacities, but not in their *personal* capacities. "It is thus clear that the Eleventh Amendment will bar [plaintiff] from bringing his claims in federal court against the state officials in their official capacities. It will not, however, bar claims against the state officials in their <u>personal capacities</u>."  *Pena v. Gardner*, 976 F.2d 469 (9th Cir. 1992).

### 2. Defendants Wrongly Asserts that Plaintiff Failed to State a Federal RICO Claim.

Plaintiff delineated the elements of a RICO claim in specificity in his Amended Complaint.  Quoting from Count IV. 18 U.S.C. §1961 and §1964 Civil Remedies for Racketeering:  To succeed in a civil RICO claim, a plaintiff must prove 1) that the defendant engaged in a pattern of racketeering activity connected to an enterprise, and that 2) this activity caused injury to the plaintiff's business or property. This requires demonstrating that the defendant committed at least two predicate acts of racketeering within a 10-year period, that these acts were 3) related and continuous, and that 4) the defendant played a role in the enterprise's affairs. The Defendants are officers, former officers or agents of ISB, or non-agents who acted in concert in a conspiracy between those agents and non-agents to deprive the Plaintiff of his property under false and contrived pretenses. Brooks Witzke, a brilliant legal mind and resident of Idaho was falsely accused by ISB officials of illegal behavior when Mr. Brooks was not even at the location claimed. *Witzke v. Idaho State Bar, Board of Commissioners* case No. 1:22-cv-00478. Mr. Pirtle, acting as ISB counsel, made intimidating and/or harassing comments to Mr.

Brooks and upon receiving an off-color response from Mr. Witzke, provided that response to the

Delaware Bar. (*Plaintiff's Verified Amended Complaint*. Doc. 31, P.30, Par.90, lines 10-16).

As demonstrated in the previous paragraph, the assertion by Defendants that Plaintiff

failed to state a Federal RICO claim is inaccurate.  Plaintiff provided the four elements necessary

for RICO and then spelled out the four factual assertions that meet those elements.  The Plaintiff

described a pattern that included at least two examples (Plaintiff's own example and that of Mr.

Witzke), that they occurred within 10 years, that the Defendants are part of an enterprise (ISB),

and that this activity harmed the Plaintiff's property (loss of South Carolina home, moving costs,

and injury to reputation among other injuries).

## CONCLUSION

ISB officials can be sued in their individual capacities under §1983 for violating

Plaintiff's First Amendment rights and retaliation against Plaintiff's First Amendment rights.

Sovereign Immunity under the Eleventh Amendment does not shield these state bar officials in

their individual capacities acting under color of state law.  ISB officials may also be found liable

under RICO as all elements of RICO were properly pled in Plaintiff's Amended Complaint.

Idaho Stae Bar officials can be sued in their individual capacity for malicious prosecution under

§1983 in federal court.

Finally, Plaintiff concedes his claim under the Idaho Tort Claim Act must be filed in

Idaho State Court and his state RICO claim will be filed there as well.  Plaintiff will do so when

this Court dismisses that claim without prejudice for Eleventh Amendment sovereign immunity.

Plaintiff's federal claims and state claims will be coordinated for Discovery purposes.

For the foregoing reasons, this Court should deny Idaho State Bar, Jillian Caires, Caralee Lambert, and Jospeh Pirtle's Motion to Dismiss, excepting the acknowledgement by Plaintiff that he would stipulate that the ITCA claim must be brought separately in state court.

Dated: December 1, 2025

/s/  Jeremy Morris
Jeremy Morris, Esq.
Idaho Bar No. 8500
PO Box 891
Hardy, Virginia 24101
Tel: (208) 964-5878
jrmorris81@icloud.com

*pro se Plaintiff.*